**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JESSE LEE HOWARD,
          *Defendant-Appellant.*

No. 03-50524

D.C. No.
CR-03-00390-GAF

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JOSE LUIS FARIAS-BLANCO,
          *Defendant-Appellant.*

No. 03-50525

D.C. No.
03-0861M-ABC

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

JOSE ANGEL CEDILLOS,
          *Defendant-Appellant.*

No. 03-50526

D.C. No.
03-0890M-ABC

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

ROBERT HERMAN BOULIES,
          *Defendant-Appellant.*

No. 03-50527

D.C. No.
03-0945M-ABC

11417

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

DANIEL RIVERA-GONZALEZ,
　　　　　　*Defendant-Appellant.*

No. 03-50532
D.C. No.
CR-03-00435-
RSWL

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

JORGE PINEDA-FERNANDEZ, a/k/a
Jorge Peneda,
　　　　　　*Defendant-Appellant.*

No. 03-50533
D.C. No.
CR-03-00439-GHK

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

RANDOLPH ARTHUR CISNEROS,
　　　　　　*Defendant-Appellant.*

No. 03-50534
D.C. No.
CR-03-00486-
RSWL

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

CORNELIO GARCIA-CHAVEZ,
　　　　　　*Defendant-Appellant.*

No. 03-50535
D.C. No.
CR-03-00493-NMM

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

JOSE CABANILLAS-NUNEZ, a/k/a Jose
Arsenio Cabanillas, Jose Arencio
Nunez,
          *Defendant-Appellant.*

No. 03-50536

D.C. No.
CR-03-00509-DMT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

RAYMOND FLORES,
          *Defendant-Appellant.*

No. 03-50537

D.C. No.
CR-03-00516-R-02

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

CHRISTIAN RAUDALES,
          *Defendant-Appellant.*

No. 03-50538

D.C. No.
CR-03-00533-FMC-
02

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          v.

MIGUEL LENCIA,
          *Defendant-Appellant.*

No. 03-50539

D.C. No.
03-0858M-ABC

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

RAYMOND CAZARES,
　　　　　　*Defendant-Appellant.*

No. 03-50540
D.C. No.
03-089M-ABC

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

VERNON CROCKER,
　　　　　　*Defendant-Appellant.*

No. 03-50541
D.C. No.
03-0899M-ABC

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

LORENA GALLARDO,
　　　　　　*Defendant-Appellant.*

No. 03-50542
D.C. No.
03-0944M-ABC

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　　v.

JEFFREY DARRYL WAFER,
　　　　　　*Defendant-Appellant.*

No. 03-50543
D.C. No.
03-0860M-ABC

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

          v.

PEDRO F. SANDOVAL-SANDOVAL,
              *Defendant-Appellant.*

No. 03-50544
D.C. No.
03-0896M-ABC

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

          v.

CARLOS ALVAREZ,
              *Defendant-Appellant.*

No. 03-50545
D.C. No.
03-0942M-ABC
OPINION

Appeal from the United States District Court
for the Central District of California
Audrey B. Collins, District Judge, Presiding

Argued and Submitted
November 1, 2004—Pasadena, California

Filed September 15, 2006

Before: Mary M. Schroeder, Chief Judge, Ronald M. Gould
and Richard R. Clifton, Circuit Judges.

Opinion by Chief Judge Schroeder

**COUNSEL**

Carlton Frederick Gunn, Deputy Public Defender, Los Angeles, California, for the defendants-appellants.

Patrick R. Fitzgerald and Becky S. Walker, Assistant United States Attorneys, Los Angeles, California for the plaintiff-appellee.

**OPINION**

SCHROEDER, Chief Judge:

This is an interlocutory appeal by criminal defendants challenging a requirement that pretrial detainees making their first appearance before a magistrate judge wear leg shackles. The

district-wide shackling policy was implemented by the United States Marshals Service for the Central District of California after consultation with the magistrate judges. In each of these seventeen cases, a magistrate judge denied the Federal Public Defender's motion for the defendant to appear without shackles at the initial appearance. The district court reviewed these adverse magistrate judges' rulings in a consolidated appeal. The district court, citing safety concerns, affirmed the magistrate judges' shackling decisions. The record contains evidence that the policy was adopted after consultation between magistrate judges and the United States Marshals Service, and that the policy was implemented to address the security concerns associated with multi-defendant proceedings in an unsecured, large courtroom, in a district in which the security personnel must cover several courthouses.

Before reaching the merits of the case, we must deal with appellate jurisdictional obstacles raised by the government. These are questions of mootness and appellate jurisdiction over interlocutory orders. We conclude that the case is not moot because the issues are capable of repetition and will otherwise evade review, and that we have appellate jurisdiction to review the orders that finally dispose of issues collateral to the merits of the cases.

On the merits, it is undisputed that the policy effectuates some diminution of the liberty of pretrial detainees and detracts to some extent from the dignity and the decorum of a critical stage of a criminal prosecution. We conclude, however, that the shackling policy was adopted with an adequate justification of its necessity. On the basis of the record before us, we affirm the district court's order upholding the policy.

## BACKGROUND

Defendants seek review of a district-wide policy requiring leg restraints during defendants' initial appearances. The policy adopted by the United States Marshals Service for the

Central District of California applies only to in-custody defendants who are shackled in leg restraints for their initial appearances in front of magistrate judges. According to the district court's order, magistrate judges at the initial appearance read defendants their rights, confirm that defendants have received a copy of the complaint or indictment stating the charges against them, appoint counsel to represent the indigent defendants, set dates for preliminary hearings and post-indictment arraignment, and make preliminary determinations of bond and detention issues. In some cases, the initial appearance includes an evidentiary detention hearing with testimony by lay witnesses or law enforcement officers.

The record explains the history of the shackling policy. The United States Marshals Service for the Central District of California enacted the policy in April 2003. The policy applies to arrested, in-custody defendants, as opposed to defendants appearing in court in response to a summons. The record indicates that the Marshals Service consulted with the magistrate judges before enacting the policy and that it was enacted to address security concerns surrounding the transportation of varying numbers of in-custody defendants from secure facilities to a less-secure courtroom. The record also indicates that during at least some period in the past, defendants were neither shackled nor handcuffed at initial appearances. Before the policy in question was implemented, however, in-custody defendants appeared in full restraints, so this policy represented a reduction of restraints on defendants.

The record contains the declaration of Robert Masaitis, Chief Deputy United States Marshal for the Central District of California. He states that "it is not possible to conduct an individualized analysis of a defendant at the time of the initial appearance," and further states that the shackling policy is necessary to ensure safety and order in the courtroom. He also states that the need for leg restraints is enhanced by staffing shortages in the Marshals Service. The declaration also states that prisoner management is crucial to the Marshals Service's

duty to provide security for the federal judiciary, and that the greatest risks of escape and violence occur during transportation from detention facilities and in the courtroom.

In each of these consolidated cases, the defendant was represented by the Federal Public Defender and made his initial court appearance with leg restraints. The Federal Public Defender moved that the defendant be permitted to appear without shackles. In some cases, the magistrate judges allowed the Federal Public Defender to argue the motion. The magistrate judge denied the motion in each case.

In a consolidated appeal from interlocutory orders, the Federal Public Defender sought district court review of the magistrate judges' denials of the motions. The district court affirmed the magistrate judges' shackling decisions. It noted that shackling may indeed detract from the dignity and decorum of judicial proceedings, but concluded that safety interests outweighed this concern. The district court clarified that any other potential problems with shackling could be addressed in an individual case, if necessary. Therefore, the district court held that the policy did not deprive the defendants of their due process rights. This consolidated appeal followed.

## MOOTNESS

[1] The government argues that this case is moot because no effective relief can be ordered at this stage for these defendants whose criminal pretrial proceedings are over. *See Bernhardt v. County of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002). Article III, Section 2 of the Constitution limits federal court jurisdiction to "cases" and "controversies." This case or controversy requirement exists through all stages of federal judicial proceedings. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). A number of doctrines have developed, however, to permit courts to review a case in which it is no longer possible to remedy the particular grievance giving rise to the litigation.

**[2]** One is the exception to the mootness doctrine for violations "capable of repetition, yet evading review." *See, e.g.*, *Gerstein v. Pugh,* 420 U.S. 103, 110 n.11 (1975). This is such a case. In *Gerstein,* the Supreme Court stated that very brief pretrial detention is by nature temporary, because it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is released or convicted. *Id.* There the Supreme Court held the exception to the mootness doctrine for violations "capable of repetition, yet evading review" applied because the constitutional violation was likely to be repeated but would not last long enough to be reviewed before becoming moot. *Id.*

**[3]** An initial proceeding in a criminal case is even more temporary than the pretrial detention at issue in *Gerstein*. This case evades review for essentially the same reason. The defendants could not have brought the challenges to the shackling by the magistrate judge to the district court, much less to us, before the harm of shackling at the initial proceeding was completed.

**[4]** This situation giving rise to this challenge also is capable of repetition. We acknowledge that we cannot assume that criminal conduct will be recurring on the part of these defendants. *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). This case is therefore distinguishable from an abortion case, the classic case capable of repetition yet evading review, because we can assume a woman can become pregnant again. *See generally Roe v. Wade*, 410 U.S. 113, 125 (1973). This makes no material difference, however, because a future charge assuredly will be brought against someone, and the shackling policy would similarly escape review.

For this reason, we have held that a case is capable of repetition when the defendants are challenging an ongoing government policy. *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1118 (9th Cir. 2003). In *Oregon Advocacy Center*, the plaintiffs alleged that the state mental hospital, which was

charged with evaluating and treating mentally incapacitated defendants, refused to accept the defendants on a timely basis. *Id.* at 1105-06. The plaintiffs challenged a state policy that results in the delays. *Id.* at 1118. We held that although the particular situation precipitating a constitutional challenge to a government policy may have become moot, the case does not become moot if the policy is ongoing. *Id.* "The continued and uncontested existence of the policy that gave rise to [the] legal challenges forecloses [the] mootness argument." *Id.*

The D.C. Circuit similarly held that when a complaint challenges an acknowledged government policy, the government cannot prevail by arguing that the controversy became moot when the particular situation at issue resolved itself. *Ukrainian-American Bar Ass'n v. Baker*, 893 F.2d 1374, 1377 (D.C. Cir. 1990). The defendants in this case are challenging an ongoing government policy.

**[5]** As a practical matter, this case is materially similar to a class action in which the class representative's claims may become moot, but there are members of the class whose claims are not moot. The Supreme Court has held that under the capable of repetition, yet evading review doctrine, the termination of a class representative's claim does not moot the claims of other class members. *See Gerstein*, 420 U.S. at 110 n.11. This holding applies outside of the class action context when the circumstances of the case are analogous to those found in class action cases. *Oregon Advocacy Ctr.*, 322 F.3d at 1117; *see also Gerstein*, 420 U.S. at 111 n.11. The defendants in this case are seeking to represent interests broader than their own, and the attorney bringing the case is a Federal Public Defender with other clients with a live interest in the case. *See Gerstein*, 420 U.S. at 111 n.11; *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1237 (9th Cir. 2001).

**[6]** The government suggests that this kind of blanket challenge to a procedure used in prosecutions must be brought as a civil class action rather than within the relevant criminal

proceedings in which it arose. Our case law does not establish that a civil forum is the exclusive forum. Indeed, it may be more appropriate to decide this case in the context of actual prosecutions rather than by resort to hypotheticals or generalizations. On a practical level, we must understand that this particular challenge could not be made in the civil context, because the only available attorney to represent these criminal defendants is the Federal Public Defender. The Federal Public Defender cannot pursue a civil class action on their behalf, because there is no provision for the appointment of a Federal Public Defender in a civil action, and the office of Federal Public Defender is barred from instituting any action on its own. *See* 18 U.S.C. § 3006A(a), Administrative Office of the U.S. Courts, *Guide to Judiciary Policies and Procedures*, Vol. VII, Ch. IV. This is still another reason why we should not hold that this challenge can proceed as only a civil action.

## APPELLATE JURISDICTION

[7] The government contends that we lack appellate jurisdiction because this is not an appeal from a final district court judgment, but from a ruling in consolidated interlocutory appeals. Courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. There is an exception to the final judgment rule for certain interlocutory orders, known as "collateral orders," where review of a final judgment would be unavailing. This exception applies when the order (1) will conclusively determine the disputed question, (2) will resolve an important issue completely separate from the merits, and (3) is effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978). Adherence to the rule of finality has been particularly stringent in criminal prosecutions, because the delays and disruptions that come with interlocutory orders can hinder the effective and fair administration of the criminal law. *Abney v. United States*, 431 U.S. 651, 657 (1977).

**[8]** All of the requirements of the collateral order doctrine apply here. The shackling order conclusively determines the disputed question of whether the shackling policy is permissible. This question is wholly separate from the merits of the underlying action. Therefore, the question before this court is whether the order would be effectively unreviewable if the court delayed the defendants' appeals until they are either convicted and sentenced, or acquitted. *See United States v. Friedman*, 366 F.3d 975, 979 (9th Cir. 2004). The order must involve "an important right which would be 'lost, probably irreparably,' if review had to await final judgment." *Abney*, 431 U.S. at 658.

**[9]** Even assuming that defendants' claims could be reviewed on appeal from conviction, their claims could not be reviewed if they are acquitted. *See Sell v. United States*, 539 U.S. 166, 176-77 (2003); *Friedman*, 366 F.3d at 979. In most cases, a defendant's rights would be sufficiently vindicated by an acquittal. *See*, *e.g., Flanagan v. United States*, 465 U.S. 259, 266 (1984) (acquittal would remedy harm of order disqualifying counsel); *United States v. MacDonald*, 435 U.S. 850, 859 (1978) (acquittal would remedy harm of speedy trial violation). This case, however, falls within a subset of cases in which acquittal does not undo the harm to the defendant. The Supreme Court has held, for example, that an order to deny bail and require pretrial detention cannot effectively be reviewed on appeal. *Stack v. Boyle*, 342 U.S. 1, 6 (1951). Similarly, we have held that involuntary commitment of a defendant is effectively unreviewable on appeal, because there would be no appellate review if the defendant was found not competent to stand trial or acquitted. *Friedman*, 366 F.3d at 979. We find this case to be analogous. An acquittal in this case would favorably terminate the prosecution of the defendant, but would not affect the deprivation of liberty that occurred during the pretrial hearing. *See Sell*, 539 U.S. at 176-77; *Friedman*, 366 F.3d at 979.

**[10]** Therefore, defendants' claims are effectively unreviewable on appeal from a final judgment. The district court's

order reviewing the magistrate judges' determinations is an appealable collateral order.

## MERITS

[11] This court has not decided whether a general policy of shackling a defendant for a proceeding in front of a judge violates due process. Nearly all of the litigation concerning shackled defendants arises in the context of proceedings in front of a jury. *See, e.g.*, *Deck v. Missouri*, 544 U.S. 622 (2005) (extending the general prohibition on the use of shackles to the penalty phase of a jury trial); *Duckett v. Godinez*, 67 F.3d 734 (9th Cir. 1995); *Jones v. Meyer*, 899 F.2d 883 (9th Cir. 1990); *Spain v. Rushen*, 883 F.2d 712 (9th Cir. 1989). These cases turn in large part on fear that the jury will be prejudiced by seeing the defendant in shackles. *See Deck*, 544 U.S. at 630; *Duckett*, 67 F.3d at 748; *see also Illinois v. Allen*, 397 U.S. 337, 344 (1970). Fear of prejudice is not at issue in the present case, as a judge in a pretrial hearing presumably will not be prejudiced by seeing defendants in shackles. In cases involving sentencing before a judge, other courts have disagreed about whether shackling violated due process. *Compare United States v. Zuber*, 118 F.3d 101, 104 (2d Cir. 1997) (finding no due process violation), *with People v. Fierro*, 821 P.2d 1302, 1322 (Cal. 1992) (finding due process violation).

[12] Shackling a defendant in any judicial proceeding can have negative effects. The Supreme Court has stated that "the use of [shackling and restraints] is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Allen*, 397 U.S. at 344; *see Deck*, 544 U.S. at 631. Moreover, the Supreme Court expressed concern that restraints could greatly reduce the defendant's ability to communicate with his counsel. *Id.* This court has noted that shackling may confuse and embarrass the defendant, thereby impairing his mental faculties. *See Duckett*, 67 F.3d at 747-48, *citing Spain*, 883 F.2d at 720-21.

Shackling may also cause the defendant physical and emotional pain. *See Rhoden v. Rowland*, 172 F.3d 633, 637 (9th Cir. 1999); *Spain*, 883 F.2d at 720-21.

**[13]** Defendants contend that the Marshals Service's shackling policy violates their due process rights. They point out that before a defendant can be shackled in front of a jury, the court must be persuaded by compelling circumstances that some measure is needed to maintain security, and that no less restrictive alternatives are available. *See Jones*, 899 F.2d at 884-85. They argue that due process requires that there be no restraint whatsoever without an individualized determination. This may go farther than due process requires. But we do not have to reach this question. This case does not involve the question of shackling in the presence of a jury or during a trial.

**[14]** In this case, due process at a minimum does require that before there is any district-wide policy affecting all incarcerated defendants whom the government must transport to a first appearance, there must be some justification. The Supreme Court has stated that "if a restriction or condition is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

Cases addressing the due process rights of pretrial detainees typically involve challenges to prison policies. *See, e.g.*, *id.* Courts ordinarily defer to the expert judgments and professional expertise of corrections officials. *Id.* at 547-48. Corrections officials must produce at least some evidence that their policies are based on legitimate penological justifications. *Swift v. Lewis*, 901 F.2d 730, 733 (9th Cir. 1990).

**[15]** The record in this case reflects that this policy furthers the legitimate governmental interest of the Marshals Service

in carrying out its statutory mandate. 28 U.S.C. § 566(a) states that "[i]t is the primary role and mission of the United States Marshals Service to provide for the security . . . of the United States [Courts]." The security concerns addressed by this policy emerge due to the Central District's practice of conducting proceedings in a large courtroom on the third floor of the Roybal Courthouse, in the presence of multiple defendants, where the risks of conflict, violence, or escape are heightened.

**[16]** The policy of requiring leg shackles for the initial court appearance before a magistrate judge is reasonably related to a legitimate security purpose. It imposes no greater restriction than necessary on the in-custody defendants. The record indicates that this policy is less restrictive than the previous policy requiring full restraints. The policy leaves in place the option for a defendant to move the court for removal of the shackles, and an individualized determination may be made at the time of the motion as to whether extenuating circumstances warrant removal of the shackles. The policy is also reasonably related to a legitimate security purpose because understaffed security officers must provide courtroom security in a large and unsecure space. The policy comes within the Supreme Court's admonition that courts should rely heavily on professional expertise in determining the proper means for carrying out security responsibilities. In *Bell*, the Supreme Court stated that

> In determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion, courts must heed our warning that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters."

441 U.S. at 540 n.23. We have found no evidence in the record that the Marshals Service exaggerates the security concerns in the Roybal Courthouse that are the basis of the policy.

**[17]** The district court's judgment to uphold the policy is AFFIRMED.