[No. A114385. First Dist., Div. Four. Mar. 27, 2007.]

In re DeSHAUN M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
DeSHAUN M., Defendant and Appellant.

**COUNSEL**

Ramiah Shanti Bright Brien, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown Jr., Attorney General, Mary Jo Graves, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

No appearance for Minor.

**OPINION**

**SEPULVEDA, J.**—The juvenile court sustained an allegation that the minor DeShaun M. committed a robbery (Pen. Code, § 211), continued him as a

ward of the court, and committed him to the Fouts Springs Youth Facility. On appeal, the minor contends that the juvenile court improperly used shackles on him at the jurisdictional hearing. We find no reversible error and affirm.

## BACKGROUND

As the underlying facts are not relevant to the sole issue on appeal, we will only briefly summarize them here. Evidence adduced at the jurisdictional hearing demonstrated that the minor took a bottle of cold medicine from the Nugget Market in Vacaville, without paying for it. When confronted outside the store, the minor struggled with store employees. He was ultimately detained and the cold medicine was recovered from his pocket.

An amended juvenile petition was filed alleging that the minor committed second degree robbery (Pen. Code, § 211) and that he gave false information to a police officer (Pen. Code, § 148.9, subd. (a)). At the contested jurisdictional hearing, the juvenile court sustained the robbery allegation and dismissed the false information allegation. The minor was continued as a ward of the court and committed to the Fouts Springs Youth Facility. This timely appeal followed.

## DISCUSSION

The minor appeared for his jurisdictional hearing in physical restraints, including leg restraints and a waist chain attached to both of his arms. His attorney requested that the restraints be removed for the jurisdictional hearing. The juvenile court would only permit the minor's right arm to be freed, so that he could write. On appeal, the minor contends that the use of physical restraints was improper and violated his constitutional rights.

■ Use of physical restraints on a criminal defendant is prohibited if visible to a jury, absent a showing of manifest need for their use. (*People v. Fierro* (1991) 1 Cal.4th 173, 218 [3 Cal.Rptr.2d 426, 821 P.2d 1302] (*Fierro*).) While the trial court need not hold a formal evidentiary hearing on the necessity of physical restraints, the record must reflect past conduct on the part of the defendant such as unruliness or intention to escape, which disrupts the judicial proceedings, or planned nonconforming conduct that would

disrupt future judicial proceedings. (*People v. Hill* (1998) 17 Cal.4th 800, 841 [72 Cal.Rptr.2d 656, 952 P.2d 673].) A court must not, therefore, have a general policy of shackling all defendants. (See, e.g., *People v. Duran* (1976) 16 Cal.3d 282, 293 [127 Cal.Rptr. 618, 545 P.2d 1322].)

While a primary concern regarding the use of physical restraints is the resultant prejudice if they are viewed by the jury, that is not the only reason for the limitation of their use. Also of concern is the potential unsettling effect on the defendant and therefore on his ability to present a defense, and " 'the affront to human dignity, the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand.' " (*Fierro, supra,* 1 Cal.4th at p. 219.) Thus in *Fierro,* the California Supreme Court held that restrictions on shackling should apply to preliminary hearings, where no jury is present. (*Ibid.*) As the court reasoned, "Although we have not previously considered the use of restraints in a preliminary hearing . . . the same principles would apply in that setting. As we have noted, the . . . rule of 'evident necessity' serves not merely to insulate the jury from prejudice, but to maintain the composure and dignity of the individual accused, and to preserve respect for the judicial system as a whole; these are paramount values to be preserved irrespective of whether a jury is present during the proceeding. Moreover, the unjustified use of restraints could, in a real sense, impair the ability of the defendant to communicate effectively with counsel [citation], or influence witnesses at the preliminary hearing." (*Id.* at pp. 219–220.) As the respondent concedes, there should be some similar restriction on the use of physical restraints in juvenile proceedings.

As in a preliminary hearing setting, however, while some showing of necessity for the use of physical restraints at a juvenile jurisdictional hearing should be required, it should not be as great as the showing required during a jury trial. "[W]hile the dangers of unwarranted shackling at the preliminary hearing are real, they are not as substantial as those presented during trial. Therefore, a lesser showing than that required at trial is appropriate." (*Fierro, supra,* 1 Cal.4th at p. 220.) Similarly, while there are dangers in using unwarranted shackling at a juvenile hearing, they are not as substantial as those presented during a jury trial and a lesser showing should suffice.

Here, the juvenile court made *no* findings regarding the necessity of using physical restraints at the jurisdictional hearing. Any error, however, was harmless. The minor testified at the jurisdictional hearing; the use of shackles clearly did not prevent him from doing so. His right hand was freed from restraints so that he could write and communicate with counsel. Counsel below did not indicate that any prejudice flowed from the use of the shackles, after the juvenile court ordered that the minor's right hand be released. There

is no indication in the record that the restraints were even visible to the witnesses, much less whether or not they affected their testimony in any way.[1]

On appeal, in support of his argument that the use of physical restraints was not harmless error, the minor points only to the fact that his attorney below had to twice ask him to repeat his answer to questions. This, the minor argues, demonstrates that he was nervous, or at least indicated a "lack of confidence." Even if the minor had to repeat his answers because nervousness led him to speak too softly,[2] no link to the use of physical restraints is indicated. Many witnesses speak softly, whether from nervousness or otherwise, and have to be asked to repeat answers to questions. The minor's reliance on People v. Mar (2002) 28 Cal.4th 1201, 1223–1224 [124 Cal.Rptr.2d 161, 52 P.3d 95] is clearly misplaced. The physical restraint device used in Mar was a stun belt that would deliver a 50,000-volt electric shock if activated.[3] (Id. at p. 1215.) While the court there had no problem concluding that the wearer might be nervous while testifying because of the device, the same cannot be said of the simple restraints used here.

The parties debate the appropriate standard of review. Whether analyzed under the Watson standard (People v. Watson (1956) 46 Cal.2d 818, 836 [299 P.2d 243]) or the more stringent Chapman test (Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824] [reversal required unless the state proves the error was harmless beyond a reasonable doubt]), any error in leaving the minor in physical restraints was harmless.[4] The prosecution has demonstrated, beyond a reasonable doubt, that the use of physical restraints did not contribute to the trial court's determination at the jurisdictional hearing.

---

[1] When asked to describe what the minor was wearing, during in-court identifications, the witnesses did not reference the restraints. The witnesses had no difficulty identifying the minor. As in Fierro, there is no indication that the witnesses' identification of the minor was suggested by the shackles that he wore. (Fierro, supra, 1 Cal.4th at p. 220.)

[2] There is nothing in the record that would indicate whether the minor was asked to repeat his answer because he spoke too softly, or simply because counsel was unable to hear his answer. Since in both instances cited by the minor on appeal, the court reporter was able to record the minor's first answer to each of the two questions cited, the problem may not have rested with the minor's speech at all.

[3] Potential effects include temporary immobilization, muscular weakness, uncontrollable shaking, immediate and uncontrolled defecation and urination, temporary debilitating pain, and possible heartbeat irregularities or seizures. (People v. Mar, supra, 28 Cal.4th at p. 1215.)

[4] If the physical restraints are not viewed by the jury, courts have applied the test in People v. Watson, supra, 46 Cal.2d 818. (People v. Mar, supra, 28 Cal.4th at p. 1225 [reversal required when there exists " 'at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result.' "].)

## DISPOSITION

The judgment is affirmed.

Ruvolo, P. J., and Reardon, J., concurred.