[No. B193134. Second Dist., Div. Seven. May 21, 2007.]

TIFFANY A., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Janice Y. Fukai, Alternate Public Defender, Felicia Kahn Grant and Stephanie Bedi, Deputy Alternate Public Defenders, for Petitioner.

No appearance for Respondent.

Steve Cooley, District Attorney, Lael Rubin and Patrick D. Moran, Deputy District Attorneys, for Real Party in Interest.

Manning & Marder Kass Ellrod, Ramirez and Steven J. Renick for Los Angeles County Sheriff's Department as Amicus Curiae on behalf of Real Party in Interest.

**O**PINION

**WOODS, J.**—Tiffany A. seeks a writ of prohibition directing the lower court to set aside its order denying her motion to preclude the use of physical restraints upon all minors who appear in juvenile court proceedings in the Lancaster Juvenile Delinquency Court absent an individualized determination of need for the restraints. Petitioner complains the juvenile delinquency court's general policy requiring all minors to be shackled is contrary to the established law concerning the appropriate use of physical restraints during court proceedings. The real party in interest, the People, and amicus curiae, the Los Angeles County Sheriff's Department, assert, inter alia, the requisite showing of need for the use of restraints depends on the type of court proceeding. They claim that where the proceedings are before a judge rather than a jury, do not involve witnesses, and are brief and/or uncontested, the necessary showing of need is far less, and does not have to be particularized as to the individual. Thus, as respondent court did in denying the motion below, they defend the general policy arguing the use of restraints in the Lancaster courtroom for all minors is warranted based on safety concerns arising from the design of the courthouse facility as well as the lack of sufficient numbers of security personnel available to monitor the courtroom. Finally, they defend the use of the policy claiming that the case law limiting the use of restraints in the courtroom arises only in the context of criminal proceedings involving adults, and thus this case law should not be applied in the context of juvenile delinquency proceedings. As we shall explain, the court's reasons for denying petitioner's motion, and the real party in interest and the sheriff's department's reasons for defending the policy, are without merit. In our view, the use of physical restraints upon minors who appear in the Lancaster Juvenile Delinquency Court must be based on a showing that such restraints are necessary for each individual minor irrespective of the type of hearing or proceeding. Consequently, we issue the writ of prohibition.

### FACTUAL AND PROCEDURAL BACKGROUND

*The Policy for the Use of Ankle Restraints on Minors*

Juvenile delinquency matters are heard in department 285 in the Alfred J. McCourtney Juvenile Justice Center in Lancaster, California. Though a total

of six sheriff's deputies are assigned to the courthouse, only one deputy is assigned as a bailiff in department 285.[1] Department 285 has four exit doors from the courtroom and a number of those doors lead to unsecured exits, public areas and/or to outside the building.

The juvenile court in department 285 has a practice and policy to put ankle shackles on all detained minors who appear in the courtroom for all proceedings. This policy has been in place for at least two years.[2] The policy of shackling minors while in the courtroom was adopted because of the number of unlocked exits and unsecured hallways in the courtroom and because of the lack of sheriff's personnel available to monitor the facility. According to the sheriff's sergeant in charge of the security and custody at the courthouse, the risk of minors escaping the courtroom is significant given the design of the courtroom and location of the courthouse. The sheriff's sergeant opined the use of shackles on all minors has prevented escape attempts and allowed order to be maintained in the courthouse. The sheriff's sergeant concluded the use of ankle restraints upon minors "is like having another deputy present . . . . Just as having a deputy at the minor's side causes him or her to think twice about any attempt to escape or to cause trouble, so too do ankle restraints, which every minor immediately realizes eliminates any possibility of making a serious escape attempt. If we had a different facility—with locked doors, secured hallways and courtrooms, sally ports, etc.—it might be possible to maintain security without the use of the ankle restraints. But in this facility, ankle restraints are the simplest, least intrusive[3] method of maintaining security."

*The Case of Tiffany A.*

Petitioner became the subject of a wardship petition brought under Welfare and Institutions Code section 602. The petition alleged 16-year-old Tiffany A. committed the crime of unlawful taking of a vehicle (i.e., a car belonging to

---

[1] Two other deputies are assigned to the detention area which houses in-custody minors and adults who have been brought to court for court appearances. Two other deputies are assigned to transport those in custody to and from the courtrooms, patrol the hallways and to provide additional security in the courtrooms as needed. The final deputy is assigned as a bailiff in the juvenile dependency courtroom.

[2] Prior to October 2003, the building that now houses department 285 was the old Antelope Valley Superior and Municipal Courthouse.

[3] The sheriff's sergeant declared that in general only ankle restraints are used on the minors; that they are not usually handcuffed or restrained in any other manner. The sheriff's sergeant stated the ankle restraints allow the minor to walk but not run; that the restraints are lightweight and "fairly unobtrusive"; and that once the minor is seated at counsel table in the courtroom, so long as his or her feet remain under the table, the ankle restraints are not visible to the judge, witnesses or anyone else in the courtroom.

her mother) in violation of Vehicle Code section 10851, subdivision (a). On June 1, 2006, at an uncontested predisposition hearing, Tiffany A. objected to the fact that she was shackled with leg chains during the proceedings.

Her counsel stated: "Your honor, Tiffany is shackled with leg chains because she is in custody. We would object to her being shackled because of the fact that the court cannot use restraints without showing a manifest need, we're citing People v. Frier [sic] (1991) 1 Cal.4th 173 [3 Cal.Rptr.2d 426, 821 P.2d 1302]. So at this point we would ask the court to remove the shackles."

The Court: "Okay. Your request is denied. The case you are citing does not apply to juveniles. . . . The main reason the minors that are in custody are shackled is because we do not have a secure egress and ingress to this courtroom like we did in the old building. But your objection is noted and overruled. . . ."

Thereafter on June 16, 2006, petitioner filed a motion to prohibit the use of shackles upon minors in the courtroom;[4] asking the court to make an order prohibiting the sheriff from using such physical restraints, unless the shackling had been ordered by the court based on an individualized evidentiary showing of "manifest need." Petitioner's counsel also attached her declaration stating that all of her clients are brought into the courtroom in leg shackles for all court appearances. She also stated she had been told the reason for the use of the restraints related to the inadequate security in the building housing the courthouse.

At the June 19, 2006, hearing on the motion, the court ruled as follows:

"[A]s I said before on this subject, there are no cases in California law dealing with minors on this issue.

"From what I am reading, that a lot of these cases started out dealing with the defendant being handcuffed, shackled in the presence of the jury. And that was ruled by the court, you can't do that, understandably so, you don't want the jury to be prejudiced. There is no jury in Juvenile. The court is the jury.

---

[4] Neither below nor before this court does petitioner challenge the practice of using physical restraints while transporting minors to and from the courtroom. Instead, petitioner's challenge centers on the use of such restraints only in the courtroom.

They have even gone—some of these cases, they indicate that the defendant can't be shackled at arraignment or any post pre-trial hearing unless there is a showing that they need to be. And again, however, though nothing to address Juveniles.

"As I said before, in this courthouse, before the minors even get to the courtroom, once they are taken from the secure holding area that probation maintains, there are multiple avenues of escape that could be used by any minor who is in—being detained. And the court, because of that security issue, has always required that the minor come into court in a contained status, to remain shackled to prevent escape.

"So the court has reviewed your motion. And for the reasons I have stated, the court will deny it."

On August 16, 2006, petitioner filed this petition for a writ of prohibition, requesting an order (1) directing the superior court to set aside its June 19, 2006, order denying her motion to prohibit shackling minors by the sheriff's department absent an individualized showing of need for the restraints; and (2) directing the superior court to issue an order granting the motion.[5] The People, designated as the real party in interest, filed a return to the petition and this court permitted the sheriff's department to file an amicus curiae brief in the matter.

On September 26, 2006, petitioner was released from custody.

## DISCUSSION

In this court, petitioner asserts the juvenile delinquency court in Lancaster erred in denying her request for an order prohibiting the use of physical restraints on all minors appearing before it without first making an individual determination for the need of the restraints. Before addressing this issue, however, we consider a few preliminary matters concerning whether this court should reach the merits. Specifically, the People and the sheriff's department assert this court should not consider the petition because it is moot as to petitioner. The sheriff's department also requests that rather than ruling on the merits of the petition this court should order an evidentiary

---

[5] A petition for a writ relief is the appropriate means of obtaining review of court policies. (See *Corenevsky v. Superior Court* (1984) 36 Cal.3d 307 [204 Cal.Rptr. 165, 682 P.2d 360].)

hearing so that the sheriff's department can appear as a party and present evidence concerning the court's policy. To these preliminary issues we now turn our attention.

## I.  *Mootness.*

Petitioner concedes she has been released from custody and may not be subject to the juvenile court's shackling policy again. Thus, she admits the relief sought in the petition is effectively moot as to her. Nonetheless, petitioner requests this court exercise its inherent discretion to resolve the issue presented by the petition because it concerns a current and ongoing policy of the juvenile delinquency court in Lancaster that requires all minors remain shackled throughout court proceedings. Consequently, she argues that the harm to minors will reoccur on a daily basis and yet may, given the nature of the proceedings, evade review. Both the People and the sheriff's department urge this court to deny the petition for mootness. The sheriff's department also points out that in her petition, petitioner sought an order preventing her from being shackled, and that the court was not asked to address the larger issue of any policy regarding the shackling of *all* minors at the Lancaster court.

■ The courts have developed various doctrines to permit the appellate review of a case in which it is no longer possible to remedy the injury giving rise to the request for review. One exception to the mootness doctrine applies to those controversies that are capable of repetition and yet evading review. (*In re William M.* (1970) 3 Cal.3d 16, 24 [89 Cal.Rptr. 33, 473 P.2d 797]; *U.S. v. Howard* (9th Cir. 2007) 480 F.3d 1005, 1009–1010.) This is such a case. In our view, this petition poses an issue of important public interest concerning the treatment of minors in our juvenile delinquency court system that is likely to reoccur in view of the juvenile court's ongoing policy of shackling of all minors during court appearances. (See *Oregon Advocacy Center v. Mink* (9th Cir. 2003) 322 F.3d 1101, 1117, fn. 9 [cases are " 'capable of repetition' " in this context where a party is challenging an ongoing government policy].) Yet, given the relatively short duration of the proceedings, and the pace through which many minors move through the court and the wardship system, this issue may evade review for a significant period of time. In addition, although petitioner styled her petition to request only a remedy for herself, it is also clear that even if she had fashioned it broadly to request relief for all minors who appear in the Lancaster juvenile delinquency proceedings, the result would have been the

same—the lower court would have denied it. Indeed, the court sought to defend the policy generally for all minors; the court's rationale for denying the motion was not focused specifically on petitioner.

Consequently, this court exercises its discretion to resolve the underlying issue in the petition concerning the legality of the lower court's shackling policy even though as to petitioner the matter is moot. (*In re Sheena K.* (2007) 40 Cal.4th 875, 879 [55 Cal.Rptr.3d 716, 153 P.3d 282]; see also *U.S. v. Howard* (9th Cir. 2006) 463 F.3d 999, 1003–1004 [9th Circuit reviewed the propriety of a district-wide policy of shackling all criminal pretrial detainees during their first court appearance even though the claim was moot as to the named defendants].)

## II. *Evidentiary Hearing.*

The sheriff's department requested that rather than rule on the merits of the petition and grant the relief requested, this court should appoint a special master or a referee pursuant to Code of Civil Procedure section 909 and California Rules of Court, former rule 22[6] to conduct an evidentiary hearing into the policy. We decline this request.

We observe the sheriff's department and the People have submitted declarations[7] from the deputy district attorney assigned to department 285 and from the sheriff's sergeant in charge of courtroom security and juvenile detentions at the courthouse. These declarations attest in detail and at length concerning the practices and policies relating to the use of physical restraints for detained minors at the facility. Both declarations provide evidence concerning the security concerns in the courtroom and courthouse and the need for the use of physical restraints in all juvenile delinquency matters. Notwithstanding this evidence, the sheriff's department asserts that such declarations are "no substitute for a full evidentiary hearing, at which multiple witnesses can be examined and cross-examined, documents can be introduced into evidence and views can be taken of the relevant portions of the courthouse." Nonetheless, the sheriff's department has not specifically identified any additional

---

[6] On January 1, 2007, the Judicial Council amended (nonsubstantively) and renumbered rule 22 as California Rules of Court, rule 8.252.

[7] We also observe that petitioner urges this court not to consider the evidence presented by the People or the sheriff because the evidence was not before the lower court when the court denied her request. Nonetheless, in her reply petitioner has also submitted new evidence supportive of her position—a declaration from two law professors who stated the physical restraint policy at issue here is "anti-therapeutic for juveniles, prejudicial to their obtaining a fair trial, and antithetical to the rehabilitative aims of the juvenile justice system."

evidence it would present at such a hearing, nor explained how such evidence would improve upon or supplement that already submitted to this court. Moreover, at bottom the issue before this court is not whether the juvenile delinquency court's and the sheriff's department's concerns over security at the Lancaster Juvenile Courthouse are credible. Instead, the issue before this court is whether the juvenile delinquency court can legally adopt a blanket policy requiring the use of physical restraints for all minors at all court proceedings without requiring an additional showing of need for restraints for each minor. We are simply not convinced that delaying these proceedings to conduct an evidentiary hearing would prove useful for our resolution of the issues.

### III. Policy for the Use of Physical Restraints.

Before this court, petitioner asserts the juvenile delinquency court erred in concluding that courtroom safety, standing alone, is a sufficient justification to establish a general policy to shackle *all* minors who appear before it at every court proceeding. Petitioner contends that to justify the use of physical restraints in the courtroom the court must first make an individual determination of "manifest need" for each minor.

The People and the sheriff's department disagree, contending: (1) where the proceeding does not require the appearance of witnesses, or a jury is not present, or the proceeding is nonadversarial and/or brief in duration "manifest need" for the use of restraints is not required; (2) an individual determination as to each minor is not legally required to justify the use of restraints; and (3) the law limiting the use of shackles should only apply in the context of criminal matters involving adults, not to juvenile delinquency proceedings.[8] With the contentions of the parties in mind, we turn to the prevailing law governing the use of physical restraints in the courtroom.

The decision whether to shackle a defendant is discretionary; a reviewing court will uphold the court's decision absent an abuse of discretion. (See *People v. Hawkins* (1995) 10 Cal.4th 920, 944 [42 Cal.Rptr.2d 636, 897 P.2d 574]; *People v. Duran* (1976) 16 Cal.3d 282, 291 [127 Cal.Rptr. 618, 545 P.2d 1322] ["In the interest of minimizing the likelihood of courtroom violence or other disruption the trial court is vested, upon a proper showing,

[8] Until several months ago all of the California case law on the use of physical restraints concerned only adult criminal proceedings. However, recently the First District Court of Appeal in *In re DeShaun M.* (2007) 148 Cal.App.4th 1384, 1386–1387 [56 Cal.Rptr.3d 627], applied principles concerning the use of physical restraints on adult defendants in a juvenile delinquency case.

with discretion to order the physical restraint most suitable for a particular defendant in view of the attendant circumstances"].) While a trial court's discretionary order is presumed correct, and error must be affirmatively shown, nonetheless an abuse is demonstrated where the court's order appears to lack all evidentiary support in the record or is based on erroneous legal principles. (See *In re Cortez* (1971) 6 Cal.3d 78, 85–86 [98 Cal.Rptr. 307, 490 P.2d 819] [" 'The term [judicial discretion] implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason. [¶] To exercise the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision' "].)

■ As early as 1871 the California Supreme Court recognized placing the criminal defendant in shackles " 'imposes physical burdens, pains and restraints upon a prisoner during the progress of his trial, inevitably tends to confuse and embarrass his mental faculties, and thereby materially to abridge and prejudicially affect his constitutional rights of defense . . . .' " (*People v. Duran, supra*, 16 Cal.3d at p. 288 (*Duran*), quoting *People v. Harrington* (1871) 42 Cal. 165, 168.)[9] In *Harrington* and later in *Duran* the Supreme Court recognized that shackling a criminal defendant prejudicially affects the defendant's constitutional right to be presumed innocent as well as the defendant's right to present and participate in the defense. (*Duran, supra*, 16 Cal.3d at p. 290; *People v. Harrington, supra*, 42 Cal. at p. 168.)

The *Duran* court stated the potential harms resulting from shackling the defendant: "possible prejudice in the minds of the jurors, the affront to human dignity,[10] the disrespect for the entire judicial system which is incident to unjustifiable use of physical restraints, as well as the effect such restraints have upon a defendant's decision to take the stand, all support our continued adherence to the *Harrington* rule." (*Duran, supra*, 16 Cal.3d at p. 290.) In addition, as the *Duran* court observed, the United States Supreme Court acknowledged that physical restraints should be used as a "last resort" not only because of the prejudice created in the juror's minds but also because "the use of this technique is itself something of an affront to the very dignity

---

[9] In 1872, the rule announced in *Harrington* was also recognized by the California Legislature with the enactment of section 13 of the Criminal Practice Act, and later recodified as Penal Code section 688, which provides "[n]o person charged with a public offense may be subjected, before conviction, to any more restraint than is necessary for his detention to answer the charge."

[10] The *Duran* court observed "[t]he removal of physical restraints is also desirable to assure that 'every defendant is . . . brought before the court with the appearance, dignity, and self-respect of a free and innocent man.' " (*Duran, supra*, 16 Cal.3d at p. 290.)

and decorum of judicial proceedings that the judge is seeking to uphold." (*Illinois v. Allen* (1970) 397 U.S. 337, 344 [25 L.Ed.2d 353, 90 S.Ct. 1057].)

Thus, the California Supreme Court stated in *Duran*, it had " 'reaffirm[ed] the rule that a defendant cannot be subjected to physical restraints of any kind in the courtroom while in the *jury's presence*, unless there is a showing of a *manifest need* for such restraints.' " (*Duran, supra,* 16 Cal.3d at pp. 290–291, italics added.) "Need" in this context was deemed to arise only when a defendant demonstrated through his or her conduct unruliness or an intent to escape, or engaged in other "nonconforming conduct or planned nonconforming conduct" that would disrupt the judicial process unless restraints were in place. (*Id.* at pp. 291–293 & fn. 11.) The *Duran* court stated the nonconforming conduct must be shown on the record and the use of restraints without such a record would constitute an abuse of discretion. (*Ibid.*) In fact, in *Duran* the Supreme Court concluded the trial court had abused its discretion in ordering the defendant shackled during the trial because no reasons appeared on the record. The *Duran* court noted that there was no showing the defendant threatened to escape or behaved violently before coming to court or while in court. The *Duran* court stated the fact of the defendant's status (as a state prison inmate charged with a violent crime) was insufficient to justify the use of restraints, holding the decision to shackle a defendant must be made on "a case-by-case basis" and cannot be based on a "general policy of imposing such restraints" upon those charged with violent crimes. (*Id.* at p. 293.)

■ While *Duran* involved shackling of a defendant during proceedings before a jury, the California courts subsequently considered whether the reasoning in *Duran* and *Harrington* applied to the use of restraints during other, nonjury criminal proceedings. In *Solomon v. Superior Court* (1981) 122 Cal.App.3d 532, 535 [177 Cal.Rptr. 1], Division Four of this district and 10 years later, the California Supreme Court in *People v. Fierro* (1991) 1 Cal.4th 173, 219–220 [3 Cal.Rptr.2d 426, 821 P.2d 1302], considered the use of physical restraints upon defendants in the context of preliminary hearings. In both *Fierro* and *Solomon* the courts concluded the principles announced in *Duran* applied equally to court proceedings other than jury trials. The *Fierro* court stated the rule of " 'evident necessity' " "serves not merely to insulate the jury from prejudice, but to maintain the composure and dignity of the individual accused, and to preserve respect for the judicial system as a whole; these are paramount values to be preserved irrespective of whether a jury is present during the proceeding." (*People v. Fierro, supra,* 1 Cal.4th at pp. 219–220.) The *Fierro* court held that as at trial, shackling could not be used at a preliminary hearing absent "some showing" of necessity for its use. Nonetheless, the court also concluded "while the dangers of unwarranted shackling at the preliminary hearing are real, they are not as substantial as those presented during trial. Therefore, a lesser showing than that required at

trial is appropriate." (*Id.* at p. 220.) In *Fierro*, however, because no reasons for the shackling appeared in the trial court record, the Supreme Court did not have an opportunity to explain what constituted a sufficient "lesser showing." (*Ibid.*)

█ Recently in *In re DeShaun M., supra,* 148 Cal.App.4th at pages 1386–1387 [56 Cal.Rptr.3d 627, 629], the First District considered a challenge to the use of physical restraints on a minor during a jurisdictional hearing in the juvenile delinquency proceeding. The court adopted the legal principles announced in *Fierro*, concluding: "[a]s in a preliminary hearing setting, however, while some showing of necessity for the use of physical restraints at a juvenile jurisdictional hearing should be required, it should not be as great as the showing required during a jury trial. '[W]hile the dangers of unwarranted shackling at the preliminary hearing are real, they are not as substantial as those presented during trial. Therefore, a lesser showing than that required at trial is appropriate.' (*Fierro, supra,* 1 Cal.4th at p. 220 [3 Cal.Rptr.2d 426, 821 P.2d 1302].) Similarly, while there are dangers in using unwarranted shackling at a juvenile hearing, they are not as substantial as those presented during a jury trial and a lesser showing should suffice." (*In re DeShaun M., supra,* 148 Cal.App.4th at p. 1387 [56 Cal.Rptr.3d at p. 630].)

In addition, whatever the amount of "need" necessary, the burden is upon the People to establish it. (*People v. Prado* (1977) 67 Cal.App.3d 267, 277 [136 Cal.Rptr. 521].) Finally, the requirement that the record must show a "need" for shackles also "presupposes that it is the trial court, not law enforcement personnel, that must make the decision an accused be physically restrained in the courtroom. A trial court abuses its discretion if it abdicates this decisionmaking responsibility to security personnel or law enforcement." (*People v. Hill* (1998) 17 Cal.4th 800, 841 [72 Cal.Rptr.2d 656, 952 P.2d 673], fn. omitted.)

From this authority we glean several principles. First, the type of proceeding determines the amount of "need" that the court must find to justify the use of restraints. If the proceeding is before a jury, "manifest necessity" is clearly required. However, where the proceedings do not require a jury a "lesser showing" of need is apparently sufficient.

The second principle, of more paramount importance here, relates to the source of the "need." Every California state court that has considered the use of physical restraints in the courtroom, irrespective of the type of proceeding, has looked to the conduct of the individual defendant to determine the need for restraints. (See, e.g., *People v. Cox* (1991) 53 Cal.3d 618 [280 Cal.Rptr. 692, 809 P.2d 351] [Supreme Court reaffirmed *Duran*, concluding that while no formal hearing is required to demonstrate need for shackles, the record

must contain substantiation of violence or threat of violence *by the accused*; a general policy to restrain all persons charged was not sufficient].) Indeed, in *DeShaun M.,* the court, citing *Duran* noted that "[a] court must not . . . have a *general policy* of shackling *all defendants.*" (*In re DeShaun M., supra,* 148 Cal.App.4th at p. 1387 [56 Cal.Rptr.3d at p. 629], italics added.)[11] In fact, because the juvenile court failed to make any findings concerning the necessity of using physical restraints on the minor for the jurisdictional hearing, the Court of Appeal found error and proceeded to examine whether DeShaun M. suffered prejudice. (*Ibid.*)

We note that no California state court case has endorsed the use of physical restraints based solely on the defendants' status in custody,[12] the lack of courtroom security personnel, or the inadequacy of the court facilities. In *Solomon,* for example, the court found an insufficient showing of need based on insufficient security personnel to secure the courtroom. The court observed the lower court record disclosed nothing more than the fact that there were two defendants charged with armed robbery in the courtroom at the same time during the preliminary hearing and that only one bailiff was present to guard them. The *Solomon* court observed that there was no evidence in the record to show that either defendant had posed a particular threat or had engaged in conduct warranting the use of restraints. The court noted, "if the magistrate believed that a single bailiff was insufficient to guard prisoners who had not yet shown 'nonconforming behavior,' his only recourse under the *Duran* standard was to send for more bailiffs." (*Solomon v. Superior Court, supra,* 122 Cal.App.3d at p. 536.)

In addition, in *Prado* the court found that the defendant had been improperly shackled when the only showing of necessity for the measure was the

---

[11] In contrast to the matter before us, there is no indication the juvenile delinquency court in *DeShaun M.* had adopted a courthouse policy of shackling on juveniles appearing in the courtroom.

[12] In *People v. Hawkins, supra,* 10 Cal.4th 920 (*Hawkins*), for example, the defendant was found to have been properly shackled when he had been involved in three fistfights in jail and had a background of violent criminal activity. (*Id.* at pp. 943, 944.) The defendant argued that shackling is justified only when a defendant disrupts courtroom proceedings or tries to escape from jail. (*Ibid.*) The *Hawkins* court stated there were no "such preconditions" on the trial court's discretion. (*Ibid.*) It observed, however, that neither a record of violence nor the fact that a defendant faced the death penalty was sufficient justification. (*Ibid.*) *Hawkins* held that the defendant's multiple instances of violent and nonconforming behavior in jail in addition to an extensive background of violent criminal conduct precluded a finding that the trial court had abused its discretion. (*Ibid.*) Thus, the Supreme Court has stated that the grounds for restraints need not be based necessarily on the conduct of the defendant at the time of trial, yet it has maintained that a record of violent criminal conduct combined with the potential punishment for the current charged offense are not sufficient to justify the defendant's shackling. (*Hawkins, supra,* 10 Cal.4th at p. 944.)

existence of " 'inadequate facilities.' " (*People v. Prado, supra,* 67 Cal.App.3d at p. 275.)

■ This authority and the legal principles emanating from it dispose of the bulk of the People and the sheriff's departments arguments before this court. Following Supreme Court authority—*Duran, Fierro, Cox* and *Hawkins* and the Court of Appeal in *DeShaun M.*—we conclude that any decision to shackle a minor who appears in the juvenile delinquency court for a court proceeding must be based on the nonconforming conduct and behavior of that individual minor. Moreover, the decision to shackle a minor must be made on a case-by-case basis. In accord with *Duran* and *Fierro* the amount of need necessary to support the order will depend on the type of proceeding. However, the juvenile delinquency court may not, as it did here, justify the use of shackles *solely* on the inadequacy of the courtroom facilities or the lack of available security personnel to monitor them.[13]

In arriving at this conclusion, we note that in *U.S. v. Howard* the Ninth Circuit reached a different result in a case where the district court adopted a general district-wide policy to shackle all in-custody defendants for their first appearances before the federal magistrate. In *Howard* the district court, after consultation with the United States Federal Marshal Service, implemented the policy to address security concerns associated with multidefendant proceedings in an unsecured, large courtroom in the federal courthouse. (*U.S. v. Howard, supra,* 480 F.3d at pp. 1008, 1013.) The Ninth Circuit concluded that the shackling policy was based on a legitimate government interest, was reasonably related to the security purpose and was the least restrictive and unobtrusive means to provide safety and security in the courtroom. (*Id.* at pp. 1012–1014.) In dicta the *Howard* court also suggested that requiring a trial court to make an "individualized determination" of need to use the restraints "may go farther than due process requires." (*Id.* at p. 1013.)

■ *Howard* does not bind this court. (*People v. Zapien* (1993) 4 Cal.4th 929, 989 [17 Cal.Rptr.2d 122, 846 P.2d 704] [" 'Decisions of the lower federal courts interpreting federal law, although persuasive, are not binding on state courts. [Citation.]' "].) In any event, we find it contrary to California law. Indeed, *Howard* in part relies on authority from the Second Circuit, *U.S. v. Zuber* (2d Cir. 1997) 118 F.3d 101, 102–104, in which the court concluded that the rules limiting the use of shackles did not apply in

---

[13] This is not to say that the trial court must completely ignore courtroom or security conditions in making the determination of need. Instead, courtroom conditions and safety concerns cannot be the only consideration. Whatever role such circumstances may play in the analysis is slight and secondary in comparison to that played by the behavior and conduct of the individual juvenile.

proceedings before a judge, in a nonjury setting. *Zuber* is contrary to *Fierro* and *DeShaun M.*

Furthermore, in contrast to the views expressed in *Howard,* we believe the potential harms resulting from an unjustified use of physical restraints relate directly to the constitutional values—the right to present a defense and the presumption of innocence—that the due process clause was intended to protect. Because these important values and others, including the integrity of the judicial system, are at stake, we conclude a court must make an individual determination of need for the use of physical restraints inside the courtroom.

In addition, *Howard* is distinguishable. First, in *Howard,* it appears it may not have been possible to conduct an individualized security-risk assessment of each defendant prior to his or her initial appearance in court. (*U.S. v. Howard, supra,* 480 F.3d at p. 1013 [a federal magistrate judge was quoted as observing " 'security-related information concerning defendants typically is incomplete' " at time of the arraignment].)[14] There was no such showing in the matter before us.

Second, *Howard* concerns only *first* appearances. Here, however, this matter concerns the use of restraints at nearly *every* appearance in the Lancaster Juvenile Delinquency Court. Petitioner, the People and the sheriff's department have taken all-or-nothing positions before this court—petitioner asserts shackles can never be used absent an individual showing of need while the People and the sheriff's department assert the use of shackles on every juvenile at nearly every proceeding is justified based on safety concerns arising from the design of the Lancaster courthouse and the lack of sufficient, available security personnel. Neither the People nor the sheriff's department have proposed that the general policy of using shackles be limited to initial court appearance as was the case in *Howard.*

Third, *Howard* involved proceedings where multiple defendants appeared in the courtroom at the same time. Here, however, this case involved a single individual. The issue of whether a different or lesser showing of need would

---

[14] In the original, now withdrawn, opinion in *Howard,* the Ninth Circuit quoted directly from the chief deputy marshal's declaration, wherein he apparently declared: " '[I]t is not possible to conduct an individualized analysis of a defendant at the time of the initial appearance.' " (*U.S. v. Howard, supra,* 463 F.3d at p. 1002, withdrawn by *U.S. v. Howard, supra,* 480 F.3d 1180.)

be required in cases involving multiple minors appearing at the same time during the court proceedings is not before this court.[15]

■ Finally, in contrast to *Howard* this situation involves a minor, not an adult criminal defendant. The objectives of the juvenile justice system differ from those of the adult criminal justice system, and thus justify a less punitive approach to those who stand accused (and not yet to be found criminally culpable) before the court. The United States Supreme Court has acknowledged the objectives of the juvenile justice system "are to provide measures of guidance and rehabilitation for the child . . . not to fix criminal responsibility, guilt and punishment." (*Kent v. United States* (1966 383 U.S. 541, 554 [16 L.Ed.2d 84, 86 S.Ct. 1045].)

Concomitantly, we also acknowledge, but ultimately reject the People's and the sheriff's department's contention that the *Duran-Fierro* line of reasoning should not apply because it arose in the context of criminal proceedings involving adults. The Attorney General apparently conceded this point and it was implicitly, and properly rejected, by the Court of Appeal in *DeShaun M.* (*In re DeShaun M., supra*, 148 Cal.App.4th at p. 1387 [56 Cal.Rptr.3d at p. 630].) It is true juvenile delinquency proceedings are not "criminal proceedings." (See Welf. & Inst. Code, § 203 ["An order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding."]; *Leroy T. v. Workers' Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 438 [115 Cal.Rptr. 761, 525 P.2d 665].) Moreover, under California law juveniles do not have the same panoply of rights as adult criminal defendants. For example, juveniles do not have the right to a jury trial or to bail. (*Aubry v. Gadbois* (1975) 50 Cal.App.3d 470, 473–474 [123 Cal.Rptr. 365] [juvenile not entitled to bail]; *In re T.R.S.* (1969) 1 Cal.App.3d 178, 182 [81 Cal.Rptr. 574] [no right to jury trial in juvenile court].) Nonetheless, all juvenile proceedings must contain essentials of due process and fair treatment. In our view, the constitutional presumption of innocence, the right to present and participate in the defense, the interest in maintaining human dignity and the respect for the entire judicial system, are among these essentials whether the accused is 41 or 14. Moreover, the rationale of the California cases—that the Constitution does not require

---

[15] The California Supreme Court has affirmed the use of physical restraints in multidefendant cases. (See *People v. Chacon* (1968) 69 Cal.2d 765, 778 [73 Cal.Rptr. 10, 447 P.2d 106] [court upheld use of restraints on Chacon and his two codefendants where all three appeared in the courtroom at same hearing, all three were charged with in-prison assaults and had prior convictions for in-prison assaults, and one had a prior conviction for an escape attempt].)

juveniles to have the full complement of rights afforded adult defendants because to do so would introduce a tone of criminality into juvenile proceedings—would not be served by requiring all juveniles, irrespective of the charges against them, or their conduct in custody, to wear shackles during all court proceedings. The use of shackles in a courtroom absent a case-by-case, individual showing of need creates the very tone of criminality juvenile proceedings were intended to avoid. (See *Duran, supra*, 16 Cal.3d at p. 290 [the use of physical restraints in the courtroom is likely to cause those present to infer the accused is a violent person disposed to commit crimes].) Given the rehabilitative objectives of the juvenile justice system, we conclude a juvenile has the same right to an individual determination of need for the use of shackles as enjoyed by an adult criminal defendant. (See *In re DeShaun M., supra*, 148 Cal.App.4th at pp. 1386–1388 [56 Cal.Rptr.3d at pp. 629–630].)

Neither the People nor the sheriff's department has offered any other sound justification for a blanket policy to shackle all minors in the juvenile delinquency court. In light of the rights as well as the potential harms at stake, none of the reasons offered—not inconvenience, the lack of security personnel or the inadequacy of the facilities—warrants a different result. In *Solomon*, Division Four, in rejecting an effort to justify the use of restraints based on the lack of adequate courtroom security, stated that the viable alternatives to shackling included: "(1) ask for additional information which might justify physical restraint of the defendants, or (2) send for additional officers capable of maintaining security without handcuffing the defendants, or (3) order the handcuffs removed." (*Solomon v. Superior Court, supra*, 122 Cal.App.3d at p. 536.) Here the juvenile delinquency court has similar options to obtain individual information about each minor[16] to support the order for shackles or send for additional security without using restraints. While we are sympathetic to the obligations and responsibility our conclusion may impose upon the juvenile delinquency court,[17] the sheriff's department and the People, those pale in comparison to the values we uphold.

---

[16] There are no facts in the record to support a finding Tiffany A. posed a threat of violence or nonconforming conduct in the courtroom. There was no evidence she acted unruly during any of the prior court proceedings. Nor was there evidence she was plotting an escape or planning to disrupt future proceedings if unrestrained. The record contains no showing of violence or a threat of violence or other nonconforming conduct. Absent such a showing, the imposition of such obvious physical restraints was improper, under *Duran* and *Fierro*. Thus, we conclude that the imposition of shackles in this case runs afoul of California Supreme Court authority that restraints can only be ordered when there is a need based on the conduct of the accused.

[17] The court has a statutory duty to provide adequate quarters and facilities for court proceedings. (Code Civ. Proc., § 144; *People v. Zammora* (1944) 66 Cal.2d 166, 235 [152 P.2d 180].)

## *DISPOSITION*

Let a writ of prohibition issue directing the respondent court to set aside its prior general policy concerning the use of physical restraints in the courtroom on all minors during juvenile delinquency proceedings; and to henceforth consider any request for the use of physical restrains upon minors in the courtroom during court proceedings on an individual case-by-case basis in accord with the views expressed herein. Petitioner is entitled to recover her costs in this writ proceeding.

Perluss, P. J., and Zelon, J., concurred.