Filed 6/19/15  P. v. Rogers CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>MARIO ROGERS,<br><br>          Defendant and Respondent. | A142269<br><br>(Contra Costa County<br>Super. Ct. No. 1405885) |

While on parole Mario Rogers, a registered sex offender, removed his GPS monitor, attempted to use it as a communication device to call his parole agent for assistance, and then sat down on a nearby curb for over an hour waiting for help to come. What came was not help, but a petition to revoke his parole for violation of Penal Code section 3010.10[1].  The evidence at Rogers's parole revocation hearing suggested that his bizarre behavior was a product of mental illness, not an attempt to flee.  The trial court nevertheless revoked parole and ordered him incarcerated for 130 days in the county jail, "deviat[ing]" downward from the 180 days specified in the statute because of the unusual circumstances surrounding the violation.

The People appeal, contending that section 3010.10, by its express terms, requires that Rogers serve 180 days and gives the trial court no discretion to impose a shorter period of imprisonment.  We are asked to reverse and remand with directions that Rogers

___

[1] "A person who is required to register as a sex offender...shall not remove, disable, render inoperable, or knowingly circumvent the operation of...an electronic, GPS, or other monitoring device affixed to his or her person as a condition of parole...." All subsequent statutory references are to the Penal Code unless otherwise noted.

1

be sent to jail for another 50 days. Instead, we conclude the appeal is moot. Because Rogers recently completed his full term of parole, he is no longer subject to the supervisory authority of the California Department of Corrections and Rehabilitation (CDCR) or the jurisdiction of the superior court, and as a result, there is no longer any possibility of our rendering effective relief on appeal.

The People urge us to exercise our discretion to decide the appeal notwithstanding its mootness. They contend this is a matter of "continuing public importance," given the dearth of case law authority under section 3010.10. We do not see it that way. The circumstances surrounding Rogers' parole violation appear to be idiosyncratic and situational. There is no basis to expect that, by dint of some policy or other circumstance pointing to likely recurrence, this case presents an inherently transient controversy that is bound to repeat itself and yet evade review. Aside from the importance that attaches to proper and just disposition of all criminal matters in accordance with law, we also see nothing here that is a matter of particularly weighty public importance.

Accordingly, without endorsing or intimating any view on what the proper length of Rogers's term of imprisonment for violating parole should have been under section 3010.10, we dismiss the appeal as moot on our own motion.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Mario Rogers was placed on parole in May 2011 with a condition requiring him to wear a Global Positioning System (GPS) ankle monitor. On March 13, 2014, the CDCR and the Contra Costa County District Attorney filed a petition to revoke Rogers's parole pursuant to section 3000.08, subdivision (f). The petition alleged that on March 5, 2014, Rogers removed his GPS monitor in violation of section 3010.10. An evidentiary hearing on parole revocation occurred on April 15, 2014.

At the hearing, the evidence showed that Rogers had mental health issues and had recently stopped taking his medication. Just prior to removing his GPS monitor, he had gotten into a fight with his mother, who told him he had to find somewhere else to live. Rogers made numerous unsuccessful attempts to contact his parole officer for advice and assistance in finding housing, including repeatedly pressing a button on the GPS monitor

that "notifies the parole office" that a parolee is attempting to contact his parole officer or the agency. He ultimately broke and removed his ankle monitor on the assumption that his agent would respond to his location. After he removed his monitor, he sat on a nearby curb for more than an hour, fruitlessly waiting for help to arrive.

At the conclusion of the hearing, the court found that Rogers had violated his parole and sustained the petition to revoke parole, reinstating it on the terms previously imposed. A parole violation having been found, the prosecution sought imprisonment for 180 days and argued that the language of section 3010.10 mandates that length of custody. The court reinstated Rogers's parole, but chose to "deviate, based on the record indicated by the court" from the 180-day recommendation and ordered 130 days in custody. On July 1, 2014, the People appealed pursuant to section 1238, subdivision (a)(10), which allows them to appeal from "the imposition of an unlawful sentence."[2]

After completion of the initial round briefing on the appeal, we reviewed the record, spotted a potential issue of mootness, and invited the parties to submit supplemental briefs addressing (1) whether Rogers is still on parole, and (2) if not, whether the appeal should be dismissed as moot. The parties have now submitted their supplemental briefs. They agree that Rogers is no longer on parole, having been discharged on May 11, 2015, but they disagree on whether the appeal should be dismissed as moot.

## II.    DISCUSSION

Moot cases are " '[t]hose in which an actual controversy did exist but, by the passage of time or a change in circumstances, ceased to exist.' [Citation.]" (*Wilson &*

---

[2] Appellant has not raised the issue, but whether the trial court's parole revocation order remanding Rogers to custody is properly considered a "sentence" for purposes of section 1238, subdivision (a)(10) may be open to question. The statutes dealing with parole supervision and revocation give the superior court the authority to "impose a term of custody" (§ 3000.08) for violations of parole and do not refer to an order returning a parolee to custody as a "sentence" but rather as "reinprisonment" (§ 3056). Because we see a more fundamental defect here and order dismissal on that ground, as explained below, we simply note this issue and do not address whether the People's appeal was properly taken from the imposition of an "unlawful sentence" under section 1238, subdivision (a)(10).

*Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.)  In assessing mootness, "[t]he pivotal question . . . is . . . whether the court can grant the plaintiff any effectual relief.  [Citations.]  If events have made such relief impracticable, the controversy has become 'overripe' and is therefore moot."  (*Id.* at p. 1574.)  Thus, "[a]n appeal becomes moot when, through no fault of the respondent, an event occurs that renders it impossible for the appellate court to grant the appellant effective relief."  (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1054.)  "Ordinarily, a moot appeal will be dismissed.  (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 642, p. 669.)  Although the parties have not raised the question of mootness, the court may examine a suggestion of mootness on its own motion."  (*City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 479.)

### A.    The Court Lost Jurisdiction After Rogers' Period of Parole Ended and the Bench Warrant Power Expired With the Loss of Jurisdiction

" 'Parole is the conditional release of a prisoner who has already served part of his or her state prison sentence.' "  (*In re Taylor* (2015) 60 Cal.4th 1019, 1037.)  Penal Code section 3000 et seq. regulates the length and terms of parole for inmates released from state prison.  " 'Once released from confinement, a prisoner on parole is not free from legal restraint, but is constructively a prisoner in the legal custody of state prison authorities *until officially discharged from parole*.'"  (*In re Taylor, supra,* 60 Cal. 4th 1019, 1037.)  (Italics added.)

The Criminal Justice Realignment Act of 2011 (Realignment) established "a uniform process for revocation of parole, probation, and postrelease supervision of most felons. . . .Under this uniform procedure, the court has jurisdiction over petitions for revocation of  supervision (including parole)."  (*Williams v. Superior Court* (2014) 230 Cal.App.4th 636, 643; § 1203.2.)  After July 1, 2013, most paroled individuals are supervised by the CDCR, but are under dual jurisdiction of the CDCR and the superior court in the county where the parolee is released or resides for purposes of parole revocation. (§§ 3000.08, 3056, subd. (b).)  Although the superior court has been vested with jurisdiction in parole revocation hearings, that jurisdiction is not without limits.  Just

4

as a court's jurisdiction expires once an individual is off probation, its jurisdiction is also at an end when an individual's term of parole is completed.

The People suggest that we could authorize the trial court to issue a bench warrant for the return of Rogers for a further appearance before it, with instructions to remand him to jail for an additional 50 days. But section 3000, subdivision (b)(9)(A), makes clear that "[o]n and after July 1, 2013, the sole authority to issue warrants for the return to actual custody of any state prisoner released on parole rests with the court pursuant to Section 1203.2" except in cases of prisoners who have escaped or are released prior to their scheduled release date. And section 1203.2, subdivision (a)(5) specifically authorizes the court to issue a warrant for a parolee's arrest "[a]t any time *during the period of supervision*." (Italics added.) Accordingly, once the period of parole supervision expires, so does the court's authority to bring an individual into court on a bench warrant.

We therefore agree with Rogers that there is no longer any possibility of our rendering effective relief on appeal. Since Rogers had no hand in bringing about these procedural circumstances, we conclude the appeal is moot.

### B.     We Decline to Exercise Our Discretion to Decide the Merits

Alternatively, the People argue that even if we determine the appeal to be moot, we should exercise our discretion to decide the merits because the case presents "an issue of recurring statewide importance." Under the public importance exception to the mootness doctrine, " '[i]f an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot.' " (*Giraldo v. Department of Corrections & Rehabilitation* (2008) 168 Cal.App.4th 231, 259.) This exception "applies to those controversies that are capable of repetition and yet evading review." (*Tiffany A. v. Superior Court* (2007) 150 Cal.App.4th 1344, 1352.)

We recognize that the public importance exception to mootness can have particular utility "in the area of the supervision of the administration of criminal justice." (*In re Walters* (1975) 15 Cal.3d 738, 744.) But it must be borne in mind that deciding moot appeals is something we do only in exceptional circumstances where it is clear that a short-lived controversy is likely to arise again and again, generally as a result of some official policy. (See, e.g., *ibid.* [ongoing court policy of shackling juveniles deemed likely to reoccur]; *In re William M.* (1970) 3 Cal.3d 16 [challenge to specific court's blanket policy of detaining juveniles accused of selling marijuana without conducting requisite inquiries]; *United States v. Howard* (9th Cir. 2007) 480 F.3d 1005 [challenge to district-wide policy requiring leg restraints during defendants' initial appearances fell under exception to mootness doctrine]; *Oregon Advocacy Ctr. v. Mink* (9th Cir. 2003) 322 F.3d 1101, 1118 [challenge to state policy that resulted in delayed acceptance of criminal defendants into mental hospital properly addressed under exception to mootness doctrine].)

There are no such circumstances here. We also see nothing of heightened public importance to deciding whether Rogers must serve an additional 50 days' jail time. There is no indication, for example, that the trial court here had a blanket practice of flouting Section 3010.10. To the contrary, the court specifically indicated that it was choosing to "deviate" from the 180-days prescribed in the statute "based on the record" established at the evidentiary hearing. The court recognized the "unusual and extenuating circumstances" of this particular case, and noted that it could not "remember a circumstance where somebody disabled, or dislodged, or took off the GPS device, and then sat and waited for the police to come." If this ruling was contrary to the mandatory terms of section 3010.10, we do not endorse it. But we also do not see it as a matter of consequence beyond this particular case.

The People point out in their supplemental letter brief that there are no published opinions interpreting section 3010.10. They also note that, as part of Realignment, a large number of individuals are becoming eligible for parole after one year of continuous custody (§ 3001, subd. (a)(2)) and many will be discharged before review of any

6

appellate issues raised by the People can be undertaken. Because section 3010.10 is of recent vintage—it went into effect as of January 2014—the dearth of decided cases applying the statute is not surprising. The unusual facts of this case make it a poor vehicle in which to begin expounding on the statute's meaning. Moreover, California Code of Regulations, title 15, section 2535, subdivision (b)(4), defines "continuous parole" as a period in which a parolee has not absconded from parole or had his parole revoked since his initial release from confinement, so such individuals would not be coming before the court on a petition to revoke their parole. In these cases, the law provides for a 30-day review period during which time the CDCR can recommend, upon a finding of good cause, that the individual be retained on parole. (§ 3001, subd. (a)(2).) Thus, the parole authorities have an avenue to ask the court to retain jurisdiction in the posited scenario, should they choose to do so.

We choose not to exercise our discretion to review the merits in spite of a finding of mootness.

## III. DISPOSITION

The appeal is dismissed.

 

 

 

_____
Streeter, J.

 

We concur:

_____
Reardon, Acting P.J.

_____
Rivera, J.

7