*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 13-FS-210

IN RE M.H., APPELLANT.

Appeal from the Superior Court
of the District of Columbia
(DEL-1624-12)

(Hon. Diana Harris Epps, Magistrate Judge)
(Hon. Jennifer Di Toro, Reviewing Judge)

(Argued October 24, 2013                          Decided March 6, 2014)

*Alec Karakatsanis*, Public Defender Service, with whom *James Klein* and *Sandra K. Levick*, Public Defender Service, were on the brief, for appellant.

*John J. Woykovsky*, Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Rosalyn C. Groce*, Deputy Solicitor General, were on the brief, for appellee, District of Columbia.

Before WASHINGTON, *Chief Judge*, FISHER, *Associate Judge*, and REID, *Senior Judge*.

FISHER, *Associate Judge*:  Appellant M.H., a juvenile, was shackled in waist, wrist, and ankle chains during his initial hearing.  He asserts that it is unconstitutional to use such restraints in the courtroom without an individualized determination that they are necessary.  Because M.H. pled guilty, was sentenced, and has completed his probation, this appeal is now moot as to him.  This issue

undoubtedly will arise in other cases, but the present record is inadequate to permit a well-founded decision, and we exercise our discretion to dismiss this appeal.

## I. Factual Background

On August 21, 2012, appellant M.H. was brought to court for an initial hearing in handcuffs, waist shackles, and leg irons; he asked that the shackles be removed unless the District of Columbia could show an individualized need for such restraints. Magistrate Judge Epps denied M.H.'s motion, concluding that the shackles would not interfere with his ability to communicate with his attorney. She announced that she would "stop, pass and I'll even step [him] back so you can talk to [him] quietly if that need be." With respect to issues of safety and security, Magistrate Judge Epps deferred to the policies of the U.S. Marshals Service and the Department of Youth Rehabilitation Services (DYRS). Pursuant to D.C. Fam. Ct. R. D (e)(1) and D.C. Code § 11-1732 (k) (2012 Repl.), on August 23, 2012, appellant moved for expedited review of Magistrate Judge Epps's order denying his Motion to Remove Shackles. That task was assigned to Judge Jennifer Di Toro.

After a few weeks at a DYRS shelter, M.H. was released to his mother. On October 2, 2012, he pled guilty to three charges as part of a plea agreement and, on October 24, 2012, Judge Robert Rigsby sentenced M.H. to one year of probation. During the plea colloquy, no mention was made of the pending review of Magistrate Judge Epps's decision on shackling. *See* Super. Ct. Juv. R. 11 (a)(2) ("With the approval of the Court and the consent of the government, a respondent may enter a plea of guilty reserving in writing the right to appeal the adverse determination of any specified pretrial motion.").

On February 8, 2013, Judge Di Toro held that "[t]here is no individualized determination of necessity requirement for the use of physical restraints outside the presence of the jury in the District of Columbia, for adults or for juveniles." M.H. appealed that ruling, claiming that his constitutional rights were violated and asserting in his brief that "blanket child-shackling policies are 'repugnant,' 'degrading,' and 'humiliating.'" Quoting *In re Amendments to the Fla. Rules of Juvenile Procedure*, 26 So. 3d 552, 556 (Fla. 2009). M.H.'s counsel has represented that his client "flinched" when told that he would be shackled in the courtroom, a reaction which counsel claims was "an indication of . . . confusion, humiliation, and embarrassment."

## II. The Right to an Individualized Hearing

## A. Factual and Legal Background

M.H. was accused of participating in a robbery with a BB gun. Due to the nature of this offense, M.H. was detained prior to his court appearance, and he was placed in the custody of DYRS. *See* D.C. Code §§ 16-2310 (a-1)(1)(A), -2311 (b)(1) (2012 Repl.). Because he was eleven years old at the time of his arrest, M.H. was classified as a "child at risk."[1] During his time in court, and while being transported thereto, a child at risk remains in the custody of DYRS. He is not delivered to the custody of the U.S. Marshals Service. D.C. Code § 16-2310.01 (2012 Repl.).

Nevertheless, M.H. asserts (and the District of Columbia does not dispute) that DYRS follows the Marshals Service policy requiring that all in-custody defendants appear in court "fully restrained," except during jury trials or "unless otherwise directed by a United States District Judge or United States Magistrate

---

[1] A "child at risk" is defined as "a child under the age of 13 or any child 13 years of age or older who, because of his or her size or physical stature, is determined to be especially physically or psychologically vulnerable to attacks by other children." D.C. Code § 16-2310.01 (2012 Repl.).

Judge." *See* U.S. Marshals Service Directives—Prisoner Operations 9.1 (D)(3)(b).

Under this policy, "fully restrained" is defined as "[s]ecured in a minimum of handcuffs, waist chain, and leg irons. Security boxes and padlocks should also be added." *See* U.S. Marshals Service Directives—Prisoner Operations 9.1 (F)(2). M.H. complains that this policy is unconstitutional because it requires him to appear shackled in court without an individualized determination that such restraints are necessary.[2] He primarily relies on *Deck v. Missouri*, 544 U.S. 622 (2005), and policies restricting the shackling of juveniles which have been adopted in several states.

The Supreme Court has held that the Due Process Clause "prohibit[s] the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a

---

[2] Ordinarily the entry of a guilty plea is deemed to waive (or forfeit) the right to appeal. *Magnus v. United States*, 11 A.3d 237, 243 (D.C. 2011). Here, review of the shackling motion was initiated prior to the guilty plea. Moreover, the plea occurred in front of a different judge and no mention was made of the shackling issue. These factors and the nature of appellant's argument indicate that this appeal is not an attempt to contest M.H.'s arrest or his plea. We therefore conclude that this appeal is not barred by the intervening guilty plea. *See United States v. Edwards*, 430 A.2d 1321, 1324 n.2 (D.C. 1981) (en banc) (ruling on the merits of a pretrial detention despite subsequent guilty pleas which changed the legal standard governing release); *Tyler v. United States*, 705 A.2d 270, 273 (D.C. 1997) (en banc) (electing to reach the merits of a pretrial detention order despite subsequent guilty plea).

particular trial." *Deck v. Missouri*, 544 U.S. at 629. This prohibition applies to both the guilt and penalty phases of trial, *id*. at 633, and is based on "three fundamental legal principles": (1) the presumption of innocence; (2) the right to consult with counsel; and (3) the "courtroom's formal dignity, which includes the respectful treatment of defendants . . . ." *Id*. at 630-31; *see Williams v. United States*, 52 A.3d 25, 34-35 (D.C. 2012) (finding no constitutional error where there was no indication that appellant had difficulty communicating with counsel or that jury could see his leg shackles). The Supreme Court has not yet addressed whether there is or should be a right to an individualized determination before a defendant appears at an initial hearing in shackles. Appellant asks us to recognize such a right, at least where juveniles are concerned.

The vast majority of jurisdictions that have abandoned the indiscriminate shackling of juveniles have done so by changing court rules,[3] by amending

---

[3] *See* Fla. R. Juv. P., Rule 8.100 (b) (2011) (Use of Restraints on the Child); Trial Ct. of the Commonwealth [of Massachusetts], Ct. Officer Pol. and Pro. Man., Ch. 4, § VI ("There is a presumption that restraints shall be removed from juveniles while appearing in a courtroom before a justice of the Juvenile Court."); N.M. R. Child. Ct., Rule 10-223A (B) (2012) (Physical Restraints in the Courtroom); Pa.R.J.C.P., Rule 139 (2011) (Use of Restraints on the Juvenile); Colleen McCarty, *I-Team: Shackles Coming Off Juveniles in Court*, 8NewsNow.com, (Nov. 1, 2012, 8:00 PM), *http://www.8newsnow.com/story/ 19979410/i-team-shackles-coming-off-juveniles-in-court* (reporting that Clark

(continued…)

institutional policies,[4] or through statutory reform.[5] Appellate decisions recognizing a due process right of juveniles to an individualized hearing before shackles may be used focus primarily on adjudication hearings, analogizing this right to the trial right of adult defendants. *In re Staley*, 364 N.E.2d 72, 73-74 (Ill. 1977) ("In the absence of . . . a showing [of necessity] . . . an accused cannot be tried in shackles whether there is to be a bench trial or a trial by jury."); *In re R.W.S.*, 728 N.W.2d 326, 331 (N.D. 2007) ("[T]he juvenile court had a duty to exercise its discretion when Richard requested that his handcuffs be removed during his adjudicatory hearing."); *State ex rel. Juvenile Dep't v. Millican*, 906 P.2d 857, 860 (Or. 1995) ("[J]uveniles have the same right as adult defendants to appear free from physical restraints [during a delinquency hearing]."); *State v. E.J.Y.*, 55 P.3d 673, 679 (Wash. 2002) ("A criminal defendant is 'entitled to appear

---

(…continued)
County Juvenile Courts, which are in the process of ending blanket shackling, are the last jurisdiction in Nevada to do so).

[4] *See, e.g.*, Alaska Admin. Code, tit. 7, § 52.365 (2000) (limiting Department of Social Services' use of handcuffs and other physical restraints on juveniles); Nicholas Confessore, *Officials Bar Shackling of Juveniles*, N.Y. Times, Feb. 4, 2010, at A28, *available at* http://www.nytimes.com2010/02/04/nyregion/04 juvenile.html? (citing internal memo of New York Office of Family and Children's Services limiting the shackling of juveniles during court appearances to handcuffs secured in front when necessary).

[5] *See* Iowa Code Ann. § 232.19(2) (West 2013); N.C. Gen. Stat. Ann. § 7B-2402.1 (West 2013); Vt. Stat. Ann. Tit. 33, § 5123 (d) (West 2013).

at trial free from all bonds or shackles except in extraordinary circumstances.'" (citations omitted)).

Two intermediate appellate courts in California have adopted a broader rule, extending to juveniles their state's prohibition against indiscriminate shackling of adults at "court proceedings other than jury trials." *Tiffany A. v. Superior Court*, 59 Cal. Rptr. 3d 363, 371, 373 (Cal. Ct. App. 2007) ("any decision to shackle a minor who appears in the Juvenile Delinquency Court for a court proceeding must be based on the non-conforming conduct and behavior of that individual minor"); *In re Deshaun M.*, 56 Cal. Rptr. 3d 627, 630 (Cal. Ct. App. 2007) ("some showing of necessity for the use of physical restraints at a juvenile jurisdictional hearing should be required"); *see People v. Fierro*, 821 P.2d 1302, 1322 (Cal. 1991) ("shackling should not be employed at a preliminary hearing absent some showing of necessity for their [*sic*] use").[6]

---

[6] Despite arguing that shackling juveniles without an individualized determination is unconstitutional, Professor Kim M. McLaurin found in a survey of state policies that "most states continue to do so on a daily basis." Kim M. McLaurin, *Children in Chains: Indiscriminate Shackling of Juveniles*, 38 Wash. U. J.L. Pol'y 213, 232 (2012). She explains that, as of 2012, "thirty-six states and the District of Columbia . . . allow indiscriminate shackling. Only eleven states have banned indiscriminate shackling of juveniles via legislation, regulation, appellate case law, or court policy." *Id.* at 239 (identifying three other states with pending legislation).

No District of Columbia court rule, institutional policy, or statute precludes shackling of a minor during Superior Court hearings, and we are not bound by the authorities cited from other jurisdictions.

## B. Mootness

Both parties concede that it is not possible to provide any effective relief to M.H.  It is our duty "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before [us]."  *In re Smith*, 880 A.2d 269, 274 (D.C. 2005) (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895)).  "The doctrine of mootness serves both to confine the power of the judiciary and to ensure that cases are decided on the basis of full argument on a developed record."  *In re Wyler*, 46 A.3d 396, 399 (D.C. 2012) (quoting *Hardesty v. Draper*, 687 A.2d 1368, 1370 (D.C. 1997)).  Therefore, "this court does not normally decide moot cases."  *Thorn v. Walker*, 912 A.2d 1192, 1195 (D.C. 2006) (citations omitted).

M.H. nevertheless argues that we have authority to hear his appeal because the shackling of juveniles during initial hearings presents an important issue

"capable of repetition, yet evading review." *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975). To fit within this exception to the mootness doctrine, "the challenged action must be of too short a duration to be litigated fully prior to its cessation or expiration . . . ." *McClain v. United States*, 601 A.2d 80, 82 (D.C. 1992). M.H. claims that "[s]hackling a child at an initial appearance is, by definition, transitory . . . . Reviewing courts cannot decide the merits of the constitutional claims while the child is still shackled."

Faced with a challenge to the shackling of adult defendants at initial appearances, the Ninth Circuit addressed the merits of seventeen consolidated interlocutory appeals, holding that "[t]he defendants could not have brought the challenges to the shackling by the magistrate judge to the district court, much less to us, before the harm of shackling at the initial proceeding was completed." *United States v. Howard*, 480 F.3d 1005, 1009 (2007).[7] Judge Di Toro cited the *Howard* court's analysis when she reached the merits of appellant's argument although his appeal was technically moot.

---

[7] Notably, once it reached the merits, the Ninth Circuit upheld the policy at issue in *Howard*, which "concern[ed] only proceedings conducted without the presence of a jury." *Id.* at 1014. The court found that "the policy leaves in place the option for a defendant to move the court for removal of the shackles, and an individualized determination may be made at the time of the motion as to whether extenuating circumstances warrant removal of the shackles." *Id.*

We likewise have the authority under the mootness doctrine to reach the merits of this recurring controversy. "The issue before us, however, is not one of authority but of when—under what circumstances—the court should exercise its 'careful discretion to reach the merits of a seemingly moot controversy.'" *In re Wyler*, 46 A.3d at 399 (quoting *McClain*, 601 A.2d at 82). Although the blanket policy of shackling detained juveniles undeniably is a significant issue, the record is not sufficiently developed to permit us to decide this issue responsibly.

## C. The Record on Appeal

The issue presented by appellant raises many questions; some implicate constitutional values, others are more practical in nature. We might be more willing to decide this moot case if adjudication were the only—or even the best—method of resolving the matter. But it appears that legislators, rule makers, or agencies of the District government may be far better positioned to consider the competing considerations.[8] Those bodies may address broad ranging questions of

---

[8] The Superior Court is especially well positioned to establish uniform rules governing the shackling of juveniles in the courtroom. Ideally, the rulemaking process would solicit and consider the views of stakeholders not reflected in the record before us now.

policy and may perhaps decide to endorse broader reforms than the constitution requires. Even if adjudication becomes necessary, this controversy may be better addressed in civil litigation, rather than in the context of a customarily brief initial hearing.

Appellant seeks a broad ruling that presumably would apply not only to him, or to youths at risk, but also to every juvenile who is brought before the court after an arrest. During oral argument, the District cautioned that an individualized hearing requirement would apply not only to M.H., but "it presumably would apply to the seventeen-year-old who's charged with AWIK or aggravated assault, it would apply to the fifteen-year-old who's charged with murder or sexual assault."

Appellant's counsel countered that juvenile shackling is prohibited in many courts and their procedures have proven effective. He properly emphasizes the importance of individual rights and the obligation of the courts to treat everyone, especially children, with dignity. But the changes he seeks may have significant impacts on courtroom security, personnel resources, and judicial administration. Before such changes are mandated, either through rulemaking, institutional policymaking, statute, or a future appeal, more information is needed to support a reasoned decision.

We hope that DYRS will actively participate in any such fact-finding process, explaining what policies it currently follows and whether or not it is prudent to change them. Similarly, the Marshals Service should be given a chance to explain how a policy requiring an individualized hearing for every in-custody juvenile would affect its duties and resources.[9] Furthermore, any future evaluation of the blanket shackling of juveniles should take into account the volume of cases that are called in the juvenile court, the number of respondents in the courtroom at any one time, the time required for an individualized hearing, and the effect a change in policy would have on the daily calendar.

Without information such as this, we decline to determine the constitutionality of DYRS's policy regarding the shackling of juveniles. *See District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182 (D.C. 1993) (courts should not decide more than the occasion demands, "particularly when the question is a constitutional one" (internal quotation marks and citation omitted)).

---

[9] In *Howard*, "[t]he record contain[ed] evidence that the [shackling] policy was adopted after consultation between magistrate judges and the United States Marshals Service." 480 F.3d at 1008. The Chief Deputy United States Marshal for the Central District of California provided the court with a declaration that detailed "the security concerns associated with multi-defendant proceedings in an unsecured, large courtroom, in a district in which [due to staffing shortages] the security personnel must cover several courthouses." *Id*.

We leave resolution of that issue to future decision makers who are presented with a more complete record.

### III.  Conclusion

This appeal is hereby dismissed as moot.

*It is so ordered.*