Filed 9/9/15  P. v. R.W. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>R.W.,<br><br>    Defendant and Appellant. | B257582<br><br>(Los Angeles County<br>Super. Ct. No. TJ20861) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Donna Groman and Gibson Lee, Judges.  Affirmed.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.

At a contested adjudication hearing, the juvenile court sustained a petition alleging that defendant and appellant R.W. (appellant) committed second degree robbery in violation of Penal Code section 211.  The court found appellant to be a ward of the court under Welfare and Institutions Code section 602[1] and placed him on home probation.

Appellant contends that the juvenile court abused its discretion when it denied his requests for a continuance of the adjudication hearing.  Appellant also presents other claims of error: that the court should have granted his request to reopen his case-in-chief at the hearing, that insufficient evidence supports the court's verdict, and that his request to have his shackles removed at the adjudication hearing should have been granted.  Under the applicable standards of review, we affirm the court's judgment.

## BACKGROUND

### A.    *Pre-Hearing Proceedings*

The district attorney filed a petition alleging that appellant committed second degree robbery when he took personal property from Liliana May (May) on April 21, 2014.  Three additional minors were also charged in connection with the same April 21, 2014, incident and all, including appellant, were ordered detained pending further proceedings.

At a court appearance on May 8, 2014, counsel for appellant requested a one-week continuance of the adjudication hearing, which was set to commence (in accordance with the time limits specified in section 657) five days later, on May 13.  Defense counsel stated she was seeking the continuance because she needed "to know if there's any audio/video-recorded statements of the witnesses in this case."  The juvenile court, the Honorable Donna Groman presiding, denied the request, stating, "All these young men are detained.  I'm not going to find good cause to continue a trial date (1) without a written motion (2) without a showing of good cause."  When appellant's attorney asked if

_____

[1]    All undesignated references are to the Welfare and Institutions Code.

2

she could file a written motion that afternoon, the court replied, "It's too late. It's absolutely too late."[2]

Regardless, appellant's attorney filed a written motion for a continuance under section 682 later that same day. The motion counsel filed asked to continue the adjudication hearing for "approximately 2 weeks." Counsel's declaration submitted with the motion argued the continuance was necessary because she had not yet received any discovery in the case; counsel specifically requested any audio or video recorded statements (including any statements of witnesses and any statements made during a field show up), any crimes of moral turpitude of any of the witnesses, and MDTs. The declaration further stated that "there is investigation pending" and asserted "I will not be ready to proceed until I receive the results of my investigation."

Judge Groman did not take action on the written continuance motion, and the parties (including the other minors charged in related petitions) appeared in court on Tuesday, May 13 for the adjudication hearing with a different judge, the Honorable Gibson Lee, presiding. Before the hearing began, the court heard from counsel for appellant. She informed the court that she was again requesting a continuance of the hearing to the following Monday—over her client's objection. Defense counsel explained that she received discovery from the People the day prior and from her own investigator that morning. She argued that she needed an expert appointed because of the discovery she received, and she lodged a motion for appointment of an eyewitness expert with the court. The court did not grant the requested continuance and proceeded

---

[2] Toward the end of the hearing, counsel for appellant asked the prosecutor to turn over crimes of moral turpitude and video-recorded statements "before the next court date."

with the evidentiary hearing.[3]

B.    *The Adjudication Hearing*

May, the victim of the robbery, testified that she was waiting at a bus stop when she saw a red car with a spoiler and a damaged taillight drive by several times. Soon thereafter, two young men came up from behind her and one pulled a purse she was carrying off her shoulder. She testified that she was facing the boys as soon as the first pulled on her bag, that she then fell to the ground, and that the second boy, who was wearing a green sweater, then snatched a chain off of her neck. She saw both boys run and chased them for a short distance until they got into a red car, driven by a third person wearing a pink shirt, and drove away. The prosecutor asked May whether the young man who stole her chain was present in court, and she said no. She did testify, however, that while the robbery was "still fresh in [her] mind" she successfully identified that boy in a field identification with police officers that responded after she called 911. On cross-examination, counsel for appellant confronted May with prior descriptions of the perpetrators she had given, including during her 911 call after the incident and to a defense investigator she spoke to on May 8, 2014, that varied from her description in court of what the boy who stole her chain was wearing.

Los Angeles Police Officers Stephen Buehler and Ruben Cardenas responded to May's 911 call and both testified at the hearing. Officer Buehler testified that less than

---

[3]    There was some confusion about whether Judge Groman had already denied the defense request to continue the hearing. Defense counsel told the court that she was "asking for a continuance today again of one week," and the court asked if it (the continuance request) was heard on May 8. Defense counsel responded, "Yes, and the judge denied it." Defense counsel then attempted to clarify that she had subsequently filed a written motion for a continuance, but Judge Lee continued under the impression that the issue had already been ruled on by Judge Groman: "It appears that the motion— the motion to continue was brought and heard before another bench officer, and it was ruled upon, it was denied, and so that ought to be the order. So if, in fact, it is—it's a renewal of a motion to continue, that motion is denied."

4

an hour after the robbery and about a mile and a half away from where it occurred, he and Officer Cardenas stopped a red vehicle with a broken taillight and a spoiler. Four occupants were inside the car; the driver was wearing a pink polo shirt. A boy identified as appellant was sitting in the back seat. According to Officer Buehler, on the floorboard of the vehicle's back seat he found a debit card with the name "Liliana May" and he found a green sweatshirt on the rear passenger's seat. The officers detained the boys and Officer Cardenas conducted a field show-up—giving May a standard admonishment and asking her to look at the boys one by one to see if she could identify whether any were involved in the robbery. Cardenas testified that May identified appellant as the person who pulled the chain off her neck. May also identified another co-minor as the one who stole her bag and the third co-minor as the driver of the car who was wearing the pink shirt. May did not identify the fourth boy in the car as a participant in the robbery.

The prosecution also called Brian Turner, a bystander near the scene of the robbery, as a witness. He testified he was walking to his car when he noticed three young men running towards a red car to join a fourth who was driving. Shortly after, Turner saw May who said, "Help me. They just robbed me. They just robbed me." In court, Turner identified co-minor D.G. as the driver of the red car and co-minor L.A. as one of the boys he saw running into the red car that sped off. Turner was not asked whether he could identify either of the other two occupants in the car.

After the prosecution rested, appellant testified. He denied being involved in the robbery. According to appellant, he was heading home on the bus with co-minor L.A. (and another boy) and they got off the bus together when L.A. got a phone call from someone who offered to give them a ride home. Co-minor D.G. picked them up in the red car when they got off the bus, and three to five minutes later, they were pulled over by the police.

## DISCUSSION

A.  *The juvenile court's denial of a continuance is not reversible error*

5

We review the juvenile court's denial of a continuance for abuse of discretion. (*In re Maurice E.* (2005) 132 Cal.App.4th 474, 481; *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1395; *In re Lawanda L.* (1986) 178 Cal.App.3d 423, 428.) If an abuse occurred, appellant must show it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error to warrant reversal. (*People v. Watson* (1956) 46 Cal.2d 818, 837; *People v. Gonzalez* (2005) 126 Cal.App.4th 1539, 1549; see also *In re Celine R.* (2003) 31 Cal.4th 45, 59-60.) Here, even assuming appellant could show an abuse of discretion in the failure to grant a continuance beyond section 657's 15-day deadline to hold an adjudication hearing, we conclude appellant has not demonstrated prejudice.

The basis for the defense request(s) for a continuance on May 8 was the asserted lack of discovery materials. Defense counsel requested specific items of discovery from the prosecution and asked, at the May 8 hearing, that they be provided "before the next court date." In her subsequently filed written motion, defense counsel also explained that her own investigation was underway and that she would "not be ready to proceed until I receive the results of my investigation." By the next court date—the May 13 adjudication hearing—defense counsel confirmed she had received discovery from the prosecution (the day prior) and her own investigator (that morning). Defense counsel did not argue on May 13 that the late receipt of discovery precluded her from making effective use of the materials she received, and the record in fact shows otherwise: defense counsel's use of a recording of May's 911 call when cross-examining her, for instance. Thus, we hold appellant has not shown a result more favorable to him would have ensued in the absence of the denial of his motion to continue for the reasons offered by the defense on May 8. (*Gonzalez, supra,* 126 Cal.App.4th at p. 1549.)

Before the presentation of evidence began at the May 13 hearing, defense counsel again argued (over her client's objection) for a one-week continuance for a separate reason: that her review of the discovery provided convinced her that she needed an expert appointed in the case. The court did not grant the request for a continuance, and

6

appellant has not adequately shown prejudice from the court's decision to move forward with the hearing as scheduled.

An expert's testimony is helpful when it addresses subjects "*sufficiently* beyond common experience *that the opinion of an expert would assist the trier of fact*" (*People v. McDonald* (1984) 37 Cal.3d 351, 367, italics in original, quoting Evid. Code § 801; see *People v. Walker* (1986) 185 Cal.App.3d 155, 166-167 [finding that corroborative evidence and defense counsel's opportunity to discuss the weaknesses of eyewitness identifications during closing argument rendered the trial court's exclusion of expert testimony harmless error]; *People v. Datt* (2010) 185 Cal.App.4th 942, 951-953 [jury instruction on evaluating eyewitness identification can be substituted for expert testimony].) Here, the trier of fact was a bench officer, not a jury, and the record shows that appellant effectively sought to undermine the prosecution's case without expert testimony. Defense counsel cross-examined May and the police officers to challenge the identification of her client as a participant in the robbery. During closing argument, she highlighted without objection the difficult nature of cross-racial eyewitness identifications (appellant and May are not of the same race): "*As we all know*, cross-racial identifications can be very, very difficult." (Emphasis added.) She further argued that May was knocked to the ground and had her hands in front of her face for at least part of the robbery, and that May's testimony was not consistent with what appellant and the other minors were wearing in booking photographs. On this record, appellant has not satisfied his burden to demonstrate that a continuance to seek appointment of an expert would have resulted in a more favorable outcome.

B. *The court did not abuse its discretion when it denied the request to reopen to introduce a post-arrest hearsay statement of a co-minor*

During appellant's testimony, his attorney asked him if he "[had] a conversation in [his] holding cell at the last court date with the co-minors." Appellant said he did, and defense counsel asked, "did [co-minor D.G.] . . . mention to you whether or not he had just dropped off or ridden around in the vehicle with anybody else prior to picking the

7

three of you up?" The court sustained an objection to the question on hearsay grounds. After the defense rested but before closing argument, defense counsel sought to revisit the ruling and argued the statement could be admitted under the hearsay exception for statements against penal interest. She moved to reopen the defense case for purposes of introducing the statement on that basis, but the court denied the request. Appellant argues this was prejudicial error.

We review a ruling on a motion to reopen for abuse of discretion and consider, among other factors, the significance of the evidence sought to be introduced and the timeliness of the motion. (*People v. Homick* (2012) 55 Cal.4th 816, 881.)

The court did not abuse its discretion when it denied the defense motion to reopen. The defense motion to reopen was effectively a request to reconsider the ruling excluding the co-minor's statement for a reason not argued earlier, namely, that it was a declaration against penal interest. Defense counsel did not make an offer of proof as to what her client would have testified when asked about the post-arrest statement allegedly made by co-minor D.G. Appellant's claim of error based on the denial of the motion to reopen fails for that reason alone. (*People v. Blacksher* (2011) 52 Cal.4th 769, 819-820 [evidence properly excluded when proponent fails to make an adequate offer of proof regarding the admissibility of the evidence, citing Evid. Code, § 1200, subd. (b)].)

Further, even if we were to treat the question itself as sufficiently indicative of what the statement would have been to permit review (that is, that appellant would have simply answered "yes" to the question posed by his attorney), we see no basis for reversal. For a statement to qualify under the hearsay exception for statements against penal interest, "the declarant [must be] unavailable as a witness and the statement, when made, [must be] so far contrary to the declarant's pecuniary or proprietary interest, or so far subjected him to the risk of civil or criminal liability . . . [or] created such a risk of making him an object of hatred, ridicule, or social disgrace in the community, that a reasonable man in his position would not have made the statement unless he believed it to be true." (Evid. Code, § 1230.) The statement at issue was not sufficiently inculpatory to qualify for admission under Evidence Code section 1230. Moreover, the statement was

8

not of great significance and, in any event, it is not likely its admission would have affected the outcome of the hearing.

C. *The evidence in support of the verdict was sufficient*

Appellant claims that the evidence at the adjudication hearing was insufficient to establish his guilt beyond a reasonable doubt. The issue at the adjudication hearing was identity, and appellant claims May's identification and the evidence that tends to corroborate it was deficient.

In reviewing a challenge to the sufficiency of evidence, "the reviewing court must consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432.) This standard applies in determining the sufficiency of the evidence to support the verdict of a juvenile court. (*In re Roderick P.* (1972) 7 Cal.3d 801, 809.) "If we determine that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, the due process clause of the United States Constitution is satisfied [citation] as is the due process clause of article I, section 15, of the California Constitution." (*People v. Osband* (1996) 13 Cal.4th 622, 690.) Furthermore, "the testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions." (*People v. Leigh* (1985) 168 Cal.App.3d 217, 221.)

The evidence in this case was not overwhelming, but it was sufficient to support the verdict under this standard of review. May did not identify appellant in court, but she did identify him in the field shortly after the robbery while the crime was still "fresh in her mind."[4] (*People v. Boyer* (2006) 38 Cal.4th 412, 480 ["Identification of the defendant by a single eyewitness may be sufficient to prove the defendant's identity as the

---

[4]    The juvenile court could have reasonably thought that May's non-identification of the fourth boy in the car during the field identification lended greater credibility to her identification of the boys that were involved.

perpetrator of a crime. . . . Moreover, a testifying witness's out-of-court identification is probative for that purpose and can, by itself, be sufficient evidence of the defendant's guilt even if the witness does not confirm it in court"]; see also *People v. Mohamed* (2011) 201 Cal.App.4th 515, 522 ["'The strength or weakness of the identification, the incompatibility of and discrepancies in the testimony . . . and the qualification of identity and lack of positiveness in testimony are matters which go to the weight of the evidence and the credibility of the witnesses, and are for the observation and consideration, and directed solely to the attention of the jury in the first instance. . . . '"].)

Viewed in the light most favorable to the verdict, additional evidence and testimony provided some corroboration of May's identification of appellant as a participant in the robbery: appellant was apprehended in a red car—near the scene of the crime and shortly after it occurred—with other boys identified by both May and Turner; Officer Buehler testified that he found a debit card with May's name on it in the back of the red car, which is where appellant was sitting; and a green sweater or sweatshirt was also found in the car (although appellant was not wearing it when the car was stopped by the police). On all these facts, a rational trier of fact could conclude the petition's allegations were proven beyond a reasonable doubt.

D. *The denial of the motion to remove appellant's shackles during the hearing was not prejudicial error*

Before testimony began at the adjudication hearing, defense counsel asked the court to have appellant and the other minors unshackled. In response, the court said, "I don't know what the policy is in this particular department." The bailiff replied, "Right. So there's only two deputies available, your honor; we have three co-minors and all of the parents." Defense counsel argued that there needed to be some additional showing that there was a reason for the minors to be shackled. The court stated, "I understand that, I understand the motion. It's denied."

A juvenile court "'may not delegate to law enforcement personnel the decision whether to shackle a defendant.' (*People v. Seaton* (2001) 26 Cal.4th 598, 651.)"

10

(*People v. Ervine* (2009) 47 Cal.4th 745, 773.)  "This emphasis that a showing exist on the record of 'manifest need' for shackles presupposes that it is the trial court, not law enforcement personnel, that must make the decision an accused be physically restrained in the courtroom"  (*People v. Hill* (1998) 17 Cal.4th 800, 841.)  Accordingly, whether there exists a pre-existing "policy" in a courtroom cannot be determinative.

Reversal of a judgment is unwarranted, however, "when the record on appeal is devoid of evidence that the unjustified use of shackles . . . had any adverse effect." (*People v. Jackson* (2014) 58 Cal.4th 724, 740 [shackles' potential to bias jurors].)  "[W]e have consistently held that courtroom shackling, even if error, was harmless if there is no evidence that the jury saw the restraints, or that the shackles impaired or prejudiced the defendant's right to testify or participate in his defense.  [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 596; *In re DeShaun M.* (2007) 148 Cal.App.4th 1384).  Here, the cause was tried before the juvenile court, not a jury.  There is no evidence in the record that the testifying witnesses were influenced by the shackles; indeed, May did not identify appellant or any of the co-minors in court, and we see no indication that appellant suffered any difficulty when testifying in his own defense.  We accordingly find no basis for reversal in the denial of counsel's motion to have her client unshackled.  (*In re DeShaun M., supra,* 148 Cal.App.4th at p. 1388 [error harmless under any standard of review].)

DISPOSITION

The judgment is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



TURNER, P.J.



MOSK, J.